_____

No. 95-1192
_____

Cheryle Ann Scheerer;                *
John Scheerer,                       *
                                     *
              Appellants,            *
                                     * Appeal from the United States
      v.                             * District Court for the
                                     * Western District of Missouri
Hardee's Food Systems, Inc.,         *
                                     *
              Appellee.              *

_____

              Submitted:  November 13, 1995

              Filed:  August 12, 1996
_____

Before McMILLIAN and LOKEN, Circuit Judges, and DUPLANTIER,*
      District Judge.
_____

McMILLIAN, Circuit Judge.


Cheryle Ann Scheerer and her husband John Scheerer appeal from a
final judgment entered in the United States District Court for the
Western District of Missouri in favor of Hardee's Food Systems,
Inc. (Hardee's), a North Carolina corporation, in their action to
recover damages for personal injuries sustained when Mrs. Scheerer
slipped and fell in the parking lot of a Hardee's restaurant.  For
reversal, the Scheerers contend that the district court erred in
(1) admitting an incident report, (2) instructing the jury,

_____

        *The Honorable Adrian G. Duplantier, United States
    District Judge for the Eastern District of
    Louisiana, sitting by designation.

(3) excluding certain expert testimony, (4) allowing certain closing arguments, and (5) committing other trial errors.  For the

reasons discussed below, we reverse the judgment and remand the case to the district court for further proceedings consistent with this opinion.

This is the second appeal. In the first appeal, this court reversed the grant of summary judgment in favor of Hardee's and remanded the case for further proceedings because there were genuine issues of material fact in dispute as to whether Hardee's created on its parking lot a slippery, dangerous or hazardous condition and whether that dangerous condition was the proximate cause of Mrs. Scheerer's fall and injuries. Scheerer v. Hardee's Food Systems, Inc., 16 F.3d 272, 275 (8th Cir. 1994). We held there was sufficient evidence from which a reasonable jury could find that Hardee's parking lot was not reasonably safe for egress, the dangerous condition had been created by Hardee's agent or employees, and Hardee's failed to exercise reasonable care to make its parking lot reasonably safe or to warn its invitees of the dangerous condition and risk involved. Id.

On the evening of June 28, 1989, the Scheerers visited the Hardee's restaurant. A Hardee's employee had watered the plants around the restaurant shortly before the accident. Mrs. Scheerer had exited the restaurant and was walking across the parking lot when she slipped and fell behind a parked car. The Scheerers' theory of the case was that the surface of the parking lot was slippery due to a combination of water over oil and grease deposits and that Hardee's failed to warn its customers about the dangerous condition. Hardee's defended on several alternative theories: the surface of the parking lot was dry, not wet, and Mrs. Scheerer's hard-soled shoes caused her to slip and fall; if there was any dangerous condition on the parking lot due to oil or grease or water on its surface, Hardee's did not cause such a dangerous condition and had no notice of it; the dangerous condition on the

-3-

parking lot was open and obvious as a matter of law; or Mrs. Scheerer had failed to keep a proper lookout.

At trial the district court excluded the testimony of the Scheerers' expert witness, a forensic consulting engineer, who would have testified about the coefficient of friction in relation to asphalt surfaces, degreasers and degreaser residue and his opinion about the cause of the accident. The district court admitted into evidence, over objection, an "incident report" prepared by a Hardee's employee that described the surface of the parking lot as dry, not wet or oily, and included the statement that "a friend explained [Mrs. Scheerer's] shoes were slick." The district court refused to give the Scheerers' proposed instruction A which eliminated the requirement of knowledge and gave instructions on notice (No. 7), open and obvious danger (No. 14), and proper lookout (No. 8). The jury found no liability on the part of Hardee's. The district court denied the Scheerers' motion for new trial and entered judgment in favor of Hardee's. This appeal followed.

First, we consider the Scheerers' contention that the district court abused its discretion in admitting into evidence the "incident report" as a business record under Fed. R. Evid. 803(6).[1]

---

[1]Fed. R. Evid. 803(6) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it

-5-

Our standard of review regarding the admissibility of evidence is whether the district court abused its discretion, and a ruling on admissibility will not be reversed on appeal absent a clear and prejudicial abuse of discretion. E.g., Hicks v. Mickelson, 835 F.2d 721, 725 (8th Cir. 1987). The incident report was prepared by a non-witness Hardee's employee and contained not only a description of the condition of the surface of the parking lot as dry, not wet or oily, but also a statement attributed to a "friend" of Mrs. Scheerer that the cause of the accident was Mrs. Scheerer's "slick shoes." Although the "friend" was not identified at trial, there was an inference that the friend was a Mrs. Fran, who was a trial witness. (The Scheerers describe Mrs. Fran as a neighbor and acquaintance rather than a friend.) The author who prepared the incident report did not testify. The Scheerers argue that even if the incident report was admissible as a business record, the statement in the incident report about the shoes should have been excluded as untrustworthy. The Scheerers also argue that the incident report was not admissible as a business record because it was prepared in anticipation of litigation.

Hardee's argues the incident report was admissible as a business record and was trustworthy because such reports are routinely made at or close to the time of an incident whenever a customer is injured or claims to have been injured. Hardee's argues that it is "perfectly clear" that the friend, that is, the

_____

was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

-6-

source of the information in the incident report, was Mrs. Fran, who, Hardee's notes, was a trial witness. Mrs. Fran testified that she could not remember stating that the cause of the accident was Mrs. Scheerer's shoes. Hardee's also argues that the incident

report rebutted the Scheerers' claim that the surface of the parking lot was wet at the time of the accident.

We hold the incident report was not admissible as a business record under Fed. R. Evid. 803(6) because the source of the information contained therein was never identified at trial. In particular, although we agree that Mrs. Fran was probably the "friend," it is unclear whether she was the source of the information about Mrs. Scheerer's shoes. In the absence of any evidence about the source of that information, we cannot test its reliability or trustworthiness. E.g., Meder v. Everest & Jennings, Inc., 637 F.2d 1182, 1187 & n.6 (8th Cir. 1981) (reference in police report about cause of accident should have been excluded because the author was not on the scene at the time of the accident, did not remember whether victim-plaintiff made a statement and did not recall with whom he spoke at the scene).

In addition, the incident report was inadmissible as a business record under Fed. R. Evid. 803(6) because it had been prepared in anticipation of litigation. Even if we assume that Mrs. Fran was the source of the information about Mrs. Scheerer's shoes, the incident report lacks reliability or trustworthiness

because it was not made in the ordinary course of business[2] but instead with the knowledge that the incident could result in

---

[2]See also Mo. Ann. Stat. § 490.660-.690 (Vernon 1952 & Supp. 1996) (Uniform Business Records as Evidence Law). The Uniform Business Records as Evidence Law was intended to avoid "the many antiquated and technical rules of common law regarding the admissibility of business records as evidence." Melton v. St. Louis Pub. Serv. Co., 363 Mo. 474, 485, 251 S.W.2d 663, 669 (Mo. 1952) (banc); see Kitchen v. Wilson, 335 S.W.2d 38, 42-43 (Mo. 1960) (optometrist's record of office examination held inadmissible as business record when it contained statements that cervical sympathetic ganglia were injured in car wreck); Voyles v. Columbia Terminals Co., 239 S.W.2d 559, 562 (Mo. Ct. App. 1951) (accident report made by trucking company after accident not record made in usual course of business); see generally T.E. Lauer, Business Records as Evidence in Missouri, 1964 Wash. U. L.Q. 24, 30.

litigation. E.g., United States v. Blackburn, 992 F.2d 666, 670 (7th Cir.) (lensometer report prepared at behest of FBI and with knowledge that any information it supplied would be used in ongoing criminal investigation was not prepared and kept in ordinary course of eyeglasses business), cert. denied, 510 U.S. 949 (1993); Picker X-Ray Corp. v. Frerker, 405 F.2d 916, 922-23 (8th Cir. 1969) (hospital report made by business manager after accident which he knew could result in litigation was not used for treatment or any other ordinary business purpose but instead with knowledge that incident could result in litigation). Here, the incident report shows on its face that it was prepared in anticipation of litigation and not in the ordinary course of Hardee's usual restaurant business operations. The directions on the incident report form instructed the person completing the form to "[g]et COMPLETE information," "[p]hone report within 30 minutes of incident, if serious," and "[f]orward written report same day." Other directions on the form noted that "[t]his form is to be used for reporting all types of incidents-- Premises or Product Liability, Fire, Theft and Property Damage" and specifically instructed the person completing the form to distribute the white copy "[t]o your local claims office," the pink copy to the "Risk Management Dept.," and the yellow copy to the "Area Director of Operations."

In light of the importance of the incident report and the information contained therein about the condition of the surface of the parking lot and Mrs. Scheerer's shoes, the incident report was extremely prejudicial and therefore its admission was reversible error.

Because the business record issue alone justifies reversal and remand, we need not discuss the other issues raised on appeal.

However, because the following issues may arise on remand, we discuss them briefly.

The Scheerers contend that the district court erred in giving certain instructions to the jury. We review jury instructions as a whole to determine whether they fairly and adequately instruct the jury as to the applicable substantive law. E.g., Tioga Public School District No. 15 v. United States Gypsum Co., 984 F.2d 915, 923-24 (8th Cir. 1993). The district court has wide discretion in the formulation of jury instructions. E.g., Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 906 F.2d 1206, 1212 (8th Cir. 1990). "A judge is not required to give every proposed instruction, nor is he or she required to accept the particular phraseology proposed by any given litigant." Id. Each element of the instructions must have an evidentiary basis. E.g., Wilson v. Danuser Machine Co., 874 S.W.2d 507, 509 (Mo. Ct. App. 1994).

The Scheerers argue the district court erred in refusing to give their proposed instruction A which eliminated the issue of knowledge and in giving instruction No. 7 which required the jury to find that Hardee's knew or should have known of the dangerous condition as an element of liability. The Scheerers argue that there was no evidence that any party other than Hardee's was responsible for the condition of the surface of the parking lot and therefore the jury did not have to decide whether Hardee's knew about the condition of the surface of the parking lot. Hardee's argues the issue of knowledge or notice of the dangerous condition was disputed. The Scheerers also argue the district court erred in submitting to the jury instruction No. 14 because whether the dangerous condition was open and obvious is a question of law which should have been decided by the district court and not the jury. The Scheerers also argue the district court erred in giving instruction No. 8 about the failure to keep a proper lookout because that instruction was essentially a comparative fault instruction and there was no evidence that Mrs. Scheerer failed to keep a proper lookout.

Jurisdiction over this matter is founded on diversity, and, because the district court was located in Missouri, we look to Missouri choice of law rules to determine which body of substantive law to apply. E.g., Schoffman v. Central States Diversified, Inc., 69 F.3d 215, 219 n.10 (8th Cir. 1995). For tort (and contract) claims, Missouri courts apply the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws § 145 (1971). E.g., Dorman v. Emerson Electric Co., 23 F.3d 1354, 1358 (8th Cir.) (applying Missouri law), cert. denied, 115 S. Ct. 428 (1994). "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." Id.

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146. "This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred . . . ." Dorman v. Emerson Electric Co., 23 F.3d at 1358. "In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement [(Second) of Conflict of Laws] principles are easy to apply." Id., citing Restatement (Second) of Conflict of Laws § 146 cmt. d (noting that, subject only to rare exceptions, local law of state where conduct and injury occurred will be applied). In the present case, because the conduct, the accident and the injury occurred in Missouri, Missouri had the most significant relationship to the accident and the parties, and therefore Missouri substantive law applies.

-14-

On the day of the accident the Scheerers were invitees. "An invitee 'is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" Harris v. Niehaus, 857 S.W.2d 222, 225 (Mo. 1993) (banc), citing Restatement (Second) of Torts § 332 (1965). "[T]he duty of owners or occupants of lands or buildings to invitees . . ., generally, is to use ordinary care to have the premises in a reasonable, safe condition for use in the manner consistent with the purpose of the invitation." Asher v. Broadway-Valentine Center, Inc., 691 S.W.2d 478, 482 (Mo. Ct. App. 1985). "[I]n a parking lot case the liability, if any, is based on the [possessor]'s duty to the invitee to provide a reasonably safe means of ingress and egress and . . . this duty 'is a duty to exercise ordinary care to keep its premises reasonably safe and to warn of any danger which is actually known to it and which invitees would not discover.'" Turcol v. Shoney's Enterprises, Inc., 640 S.W.2d 503, 505 (Mo. Ct. App. 1982).

> When the plaintiff is an invitee, a possessor of land is subject to liability for injuries caused by a condition on the land only if the possessor (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Harris v. Niehaus, 857 S.W.2d at 225-26, citing Restatement (Second) of Torts § 343.

> Thus, to meet the applicable standard of care a possessor of land must (1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are

-16-

likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at least ascertain the condition of the land, to give such warning that the invitee may decide intelligently

whether or not to accept the invitation, or may protect himself [or herself] against the danger if he [or she] does accept it.

Harris v. Niehaus, 857 S.W.2d at 226, citing Restatement (Second) of Torts § 343 cmt. b.

Under the second element of § 343, when the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees "unless the possessor should anticipate the harm despite such knowledge or obviousness." This element acknowledges that a possessor of land is not an absolute insurer of the well-being of its invitees. As a general matter, therefore, a possessor's actions do not fall below the applicable standard of care if the possessor fails to protect invitees against conditions that are open and obvious as a matter of law.

Harris v. Niehaus, 857 S.W.2d at 226, citing Restatement (Second) of Torts § 343A(1).

The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by [the invitee] in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.

Dixon v. General Grocery Co., 293 S.W.2d 415, 418 (Mo. 1956) (citations omitted). Thus, "[a possessor] is under no duty to protect an invitee who is in an equal position to protect himself [or herself]. Where the danger is obvious or known to the invitee

-18-

he [or she] consents to the risk and the [possessor] owes no duty."
Sellens v. Christman, 418 S.W.2d 6, 8 (Mo. 1967).

The possessor's liability is based upon its superior knowledge of the dangerous condition of the premises which results in injury. E.g., Ward v. Temple Stephens Co., 418 S.W.2d 935, 938 (Mo. 1967), abrogated in part by Sheil v. T.G. & Y. Stores Co., 781 S.W.2d 778, 780-81 (Mo. 1989) (banc) (holding method of merchandising and nature of article causing injury more important than length of time dangerous article has been in area in which injury occurs); White v. Kroger Co., 573 S.W.2d 375, 376 (Mo. Ct. App. 1978). For that reason, liability requires notice to the owner or possessor, either actual or constructive, of the dangerous condition. Ward v. Temple Stephens Co., 418 S.W.2d at 938. A possessor will be deemed to have had actual notice if it is affirmatively shown that an agent or employee of the possessor created the dangerous condition. Id.; Asher v. Broadway-Valentine Center, Inc., 691 S.W.2d at 483 (imputing to owner actual knowledge of owner's employee as to dangerous condition of paving and subsurface of parking lot).

The district court should not have included notice as an element of liability in instruction No. 7. Here, the evidence conclusively showed Hardee's had actual and constructive knowledge of the dangerous condition of the surface of the parking lot. A Hardee's employee testified about the degreaser he used the day that Mrs. Scheerer slipped and fell, that the degreaser left a residue on the surface of the parking lot because there was no drainage, and that, on the day of the accident, he had watered the plants around the restaurant and that water from the hose had run onto the sidewalk and the parking lot directly outside the restaurant entrance and exit. The employee's actual knowledge of the dangerous condition is imputable to Hardee's. Hardee's also had constructive knowledge of the dangerous condition because it knew that the parking lot was located directly in front of the restaurant entrance and exit; vehicles would drip oil and other

-20-

liquids on the surface of the parking lot; the parking lot sloped down away from the restaurant; and that there was a specific

company procedure for using degreasers on the surface of the parking lot.

The district court did not err in submitting the issue whether the dangerous condition was open and obvious to the jury in instruction No. 14. Whether the challenged condition was so openly and obviously dangerous that a reasonably prudent individual would not attempt it essentially asks whether that individual was contributorily negligent, which is usually a question of fact for the jury (or the trial court as fact-finder). See, e.g., Dixon v. General Grocery Co., 293 S.W.2d at 419 (holding danger was not so obvious to invitee as to relieve defendant of liability as a matter of law); Summa v. Morgan Real Estate Co., 350 Mo. 205, 214, 165 S.W.2d 390, 393-94 (1942) (whether condition was so obvious that plaintiff was bound to see it and whether plaintiff was contributorily negligent in not observing it were both questions of fact for the jury's consideration); Turcol v. Shoney's Enterprises, Inc., 640 S.W.2d at 507-08. However, the facts and circumstances in a particular case may be so one-sided that the trial court can say, as a matter of law, that a dangerous condition was so open and obvious that the plaintiff knew or should have known of the danger and assumed the risk. See, e.g., Harris v. Niehaus, 857 S.W.2d at 226-27 (holding as a matter of law that natural condition present was open and obvious to all who would encounter it); Hokanson v. Joplin Rendering Co., 509 S.W.2d 107, 110-14 (Mo. 1974) (holding plaintiff's detailed and thorough knowledge of conditions and dangers put plaintiff as a matter of law in position to protect himself equal to that of defendant); Adkins v. Sutherland Lumber Co., 307 S.W.2d 17, 22-23 (Mo. Ct. App. 1957) (holding danger was so open and obvious to plaintiff that as a matter of law he knew or should have known of danger). In the present case, the evidence was not so one-sided and the district court did not err in

submitting to the jury the issue whether the dangerous condition was open and obvious.

The district court did not err in giving instruction No. 8 about the failure to keep a proper lookout. There was evidence to support this instruction. The instruction correctly required the jury to assess a percentage of fault to Mrs. Scheerer if the jury found she negligently failed to keep a proper lookout. Comparative fault compares the degree of causation flowing from the negligent acts of the defendant, if any, to the negligent acts of the plaintiff, if any. See, e.g., Jones v. National Supermarkets, Inc., 729 S.W.2d 218, 223 (Mo. Ct. App. 1987).

The Scheerers also argue the district court abused its discretion in excluding the testimony of their expert witness, a forensic consulting engineer, who would have testified about the effect of the degreaser and degreaser residue on the surface of the parking lot and his opinion about the cause of the accident. We cannot say the district court abused its discretion in deciding that the expert's specialized knowledge would not have assisted the jury in assessing the dangerousness of the surface of the parking lot. Fed. R. Evid. 702; see, e.g., Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir. 1995) (upholding exclusion of proffered expert testimony on similar topic), cert. denied, 116 S. Ct. 1017 (1996).

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-24-