# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-2477

———————

| | | |
|---|---|---|
| Charles S. Chadwell, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Koch Refining Company, LP, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted:  December 15, 2000

Filed:  May 17, 2001

———————

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

———————

McMILLIAN, Circuit Judge.

Charles Chadwell appeals from a final order entered in the United States District Court[2] for the District of Minnesota, upon a jury verdict in favor of his former employer, Koch Refining Co., on Chadwell's claim of wrongful termination in violation

———————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932.  Chadwell v. Koch Refining Co., No. 98-CV-761 (D. Minn. 2000) (order).  For reversal, Chadwell argues that the district court abused its discretion in (1) excluding as hearsay evidence from a third party supporting his claim of pretextual termination, (2) instructing the jury that the Minnesota Whistleblower Statute requires intentional retaliation, and  (3) denying his motion for a new trial on the ground that the jury's verdict was against the weight of the evidence.  For the reasons discussed below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. §1441(a) and §1332(a).  Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following facts are presented in the light most favorable to the jury's findings.  Charles Chadwell began working for Koch Refining Co. ("Koch"), a petroleum refinery operator in Rosemount, Minnesota, in October 1977.  In July 1995, he transferred to Koch's waste water treatment plant.

In October 1996, Chadwell approached his supervisor and offered to retire early in exchange for $250,000.  Koch refused Chadwell's offer.  Not long thereafter, Chadwell began raising questions about Koch's environmental practices.  In February 1997, Chadwell and a co-worker, Terry Stormoen, collected evidence from the refinery allegedly to document environmental violations, including photos  of the refinery and copies of Koch's logbooks and other paperwork.  On April 4, 1997, Chadwell, accompanied by  Stormoen and Bob Jacobson, a former Koch waste water treatment plant employee, contacted the Minnesota Pollution Control Agency ("MPCA") regarding Koch's environmental practices.  Immediately after the meeting, Chadwell

and Stormoen informed their supervisor that they had contacted the MPCA but would not reveal what they had told the agency. On April 11, 1997, Koch met with Chadwell and Stormoen to identify their concerns, but Chadwell refused to answer many of Koch's questions, claiming that he suffered from short-term memory loss stemming from past alcohol abuse. Koch informed Chadwell that his lack of cooperation might result in his termination. James "Tippy" Grotjohn, Chadwell's union steward, also attended the meeting and took notes.

On April 21, 1997, a cigarette ash was found in the company truck Chadwell had driven on the previous shift. Koch policy forbids smoking in the refinery due to the explosion hazard, and Koch has fired employees for violating that rule. Chadwell admitted that he had smoked a cigarette while on shift that night, but not on refinery property.

On April 22, 1997, Chadwell met with Larry Moorman, an investigator in Koch's legal department. Moorman questioned Chadwell about Chadwell's expressed concern that environmentally hazardous product spills had been improperly underreported at Koch. Chadwell did not offer any factual support for his concern, claiming again that he had short-term memory loss. Chadwell called in sick the next two days, asserting that he could not work due to work-related stress. Koch has a longstanding rule that any employee who misses two consecutive days of work due to a work-related ailment must see a doctor. For this reason, along with Chadwell's claims of short-term memory loss, Koch required Chadwell to see a doctor. Koch officials told Chadwell he would be placed on administrative leave with pay pending the company's investigation into the smoking issue, which was eventually dropped for lack of proof.

Koch's company doctor referred Chadwell to a neurologist to evaluate the alleged memory loss, who in turn referred him to a psychologist, Dr. Jack Schaffer. Dr. Schaffer concluded that Chadwell did not have memory loss and could safely perform his job duties. Dr. Schaffer's report stated that Chadwell denied telling Koch that he

had memory loss. After this meeting, Koch issued a written warning to Chadwell, reprimanding him for his inconsistent statements. Koch's human resources manager at the time believed that Chadwell was "playing games."

On August 19, 1997, Chadwell was officially reprimanded for an incident in which a basin used to treat oily water overflowed, shooting foam 10 to 15 feet into the air, and Chadwell laughed at it rather than assisting to control or clean up the mess. On September 30, 1997, Chadwell had an outburst in which he told his supervisors that he was going to the newspapers and that Koch management would be going to jail for violating environmental regulations. Chadwell also told his supervisors that the plant manager had threatened to kill him and that Koch had placed a bomb in his mailbox.[3]

On October 7, 1997, Chadwell met with Koch representatives and told them that he had taken home a suitcase full of Koch's documents that supported his allegations of Koch's environmental noncompliance, which he refused to return without a court order. Koch placed Chadwell on an indefinite suspension and sent Chadwell a letter on October 9 to inform him that his suspension would last until he returned the documents. Chadwell recorded in his diary (which he had begun keeping right before he reported Koch to the MPCA) that he had been suspended for an indefinite time and drew a smiley face next to the notation. On October 17, after consulting with his lawyer, Chadwell produced some of the documents. Chadwell returned to work on his next scheduled work day, October 24, and Koch warned him in writing that any "future failure to properly perform his job and/or comply with the Company's requests that [he] provide information . . . will be grounds for immediate discharge."

_____

[3]Chadwell's perception of the death threat was based upon a statement the plant manager had made during a meeting about how the army handled people who did not cooperate, even though the plant manager also said that Koch handled things differently. Chadwell's perceived "bomb" in the mailbox was actually a soda bottle that exploded in Chadwell's neighbor's mailbox.

On November 24, 1997, Chadwell confronted a supervisor, claiming that the plant manager had threatened to kill him, that Koch had "blown up" his mailbox, and that Koch was allowing hazardous waste to be transported within the refinery without proper company paperwork. Koch met with Chadwell on December 9, 1997, to discuss his claims and found no support for his allegation that his life had been threatened. Chadwell admitted that he had fabricated these statements because he wanted to get fired. At the end of the meeting, Chadwell was again suspended pending further investigation. Koch reviewed his file and decided to terminate Chadwell, informing him on December 17, 1997.

On February 19, 1998, Chadwell sued Koch in state court under the Minnesota Whistleblower Statute, Minn. Stat. § 181.932,[4] claiming that Koch fired him in retaliation for the report he made to the MPCA in April 1997 and for the reports he made directly to Koch regarding Koch's violations of environmental regulations. Chadwell announced the lawsuit at a press conference. Chadwell also suggested to a newspaper reporter that he would make the Koch documents available to the newspaper if Koch refused to settle the lawsuit. Koch removed the case to federal district court on the basis of diversity jurisdiction.

At trial, beginning on January 3, 2000, Koch introduced evidence of secretly-recorded phone conversations in which Chadwell confided to friends and family that

_____

[4]Minn. Stat. § 181.932 provides, in pertinent part:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: (a) the employee . . . in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official . . . .

he was trying to get fired so he would be eligible for unemployment compensation. Chadwell attempted to introduce into evidence the notes taken by his union steward, Grotjohn, at the meetings with Koch, claiming that the notes corroborated his version of events. The district court excluded any statements made by Chadwell in the notes as inadmissible hearsay and cumulative under Fed. R. Evid. 403. However, the district court allowed Grotjohn to testify regarding statements made by Koch managers at these meetings as admissions by a party-opponent admissible under Fed. R. Evid. 801(d)(2).

On January 19, 2000, the jury returned a verdict finding that Koch did not retaliate against Chadwell in violation of the Minnesota Whistleblower Statute. Chadwell filed a motion for a new trial, which was denied on April 20, 2000. This appeal followed.

## Discussion

Exclusion of Hearsay Evidence

We review the district court's evidentiary rulings for "clear and prejudicial abuse of discretion." EFCO Corp. v. Symons Corp., 219 F.3d 734, 739 (8th Cir. 2000). Chadwell argues that the district court abused its discretion by excluding Grotjohn's meeting notes as hearsay because (1) the notes were not offered to show the truth of the statements, but to demonstrate Chadwell's participation and cooperation with Koch; (2) the notes comprised the only evidence which showed that Koch's reason for Chadwell's termination was pretextual; (3) the notes from a third party were essential for the jury to resolve the conflicting testimony from both parties; and (4) the inability to present that evidence prevented him from proving his case. See Brief for Appellant at 20 (citing Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1102-03 (8th Cir. 1988) (holding that the exclusion of an employer's prior discriminatory acts deprived the employee of a fair chance to prevail before a jury in a wrongful termination claim)). We disagree.

The district court did not abuse its discretion in excluding Grotjohn's notes as double hearsay. The notes, which contained out-of-court statements regarding Chadwell's out-of-court statements offered to prove the truthfulness of Chadwell's assertion that he answered Koch's questions honestly and completely, clearly constitute hearsay evidence. See Fed. R. Evid. 801. Nor do the notes fall within any recognized exception to the hearsay rule. See United States v. Benson, 961 F.2d 707, 709 (8th Cir. 1992) (Benson) (report of comments of witness constituting double hearsay deemed inadmissible under the Federal Rules of Evidence because it did not adequately fulfill the requirements of any hearsay exception). Hearsay evidence may not be admitted unless it falls into one of the recognized hearsay exceptions, regardless of how crucial it may be to proving the plaintiff's case. Fed. R. Evid. 802; Ohio v. Roberts, 448 U.S. 56, 66 (1980) (evidence not falling within a firmly-rooted hearsay exception must be excluded absent a showing of particularized guarantees of trustworthiness). Consequently, the district court properly admitted the notes only insofar as the content of the notes warranted a hearsay exception. In this case, Koch's statements made during its meetings with Chadwell were the only admissible portions of the notes because they qualified as admissions by a party-opponent under Fed. R. Evid. 801(d)(2).

Chadwell alternatively argues that the district court abused its discretion by failing to admit the notes into evidence under the hearsay exception of Fed. R. Evid. 803(6),[5] which permits introduction of records of regularly conducted business activity.

_____

[5]Fed. R. Evid. 803(6) provides:

**Records of Regularly Conducted Activity** – A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data

We again disagree.

First, it is not clear that Grotjohn's note-taking, resulting from his duties as a union steward, qualifies as "regularly conducted business activity." Grotjohn was not acting as a Koch employee during the meetings, but rather as Chadwell's union representative. See, e.g., White Industries v. Cessna Aircraft Co., 611 F.Supp. 1049, 1060 (W.D. Mo. 1985) (requiring all parties to be acting under a business duty to the business activity in question in order to justify the 803(6) hearsay exception). His presence implies a protective function, making the notes more analogous to records kept in anticipation of a lawsuit, which do not qualify for the Rule 803(6) hearsay exception. See Sheerer v. Hardee's Food Systems, 92 F.3d 702, 706-07 (8th Cir. 1996) (holding that a report made in anticipation of litigation was not made in the ordinary course of business and therefore lacked reliability). In addition, the meetings occurred irregularly and for a specific purpose, casting doubt upon whether they can legitimately be classified as "kept in the course of a regularly conducted business activity." Fed. R. Evid. 803(6).

Even if Grotjohn's notes do warrant the Rule 803(6) exception as records kept during the course of the regular business activity of a union steward, there is no evidence to indicate that the source of the information guarantees trustworthiness as required by Rule 803(6). Id. The meetings between Chadwell and Koch were not structured to ensure the parties' veracity. In fact, the content of the notes is untrustworthy because Chadwell himself, in his testimony at trial, made statements contrary to the statements reflected in the notes. See Medler v. Everest & Jennings, 637 F.2d 1182, 1187 (8th Cir. 1981) (rejecting evidence offered under the Rule 803(6) hearsay exception because other evidence indicated that the information was not trustworthy).

---

compilation . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Ultimately, though, the 803(6) hearsay exception is unnecessary because Chadwell, the original source of the statements at issue, testified at trial. The purpose of Rule 803(6) is to admit hearsay evidence, as long as it possesses sufficient trustworthiness, which "justif[ies] nonproduction of the declarant at trial even though he may be unavailable." Advisory Committee Note to Rule 803. In the present case, Chadwell not only was available to, but did, testify at trial. As a result, the district court properly concluded that the admission of the notes regarding Chadwell's statements would have been "needless presentation of cumulative evidence." Fed. R. Evid. 403. Chadwell corroborated Koch's version of events by testifying at trial that: (1) he had not provided Koch with complete information regarding the alleged environmental violations, (2) he had claimed to suffer from short term memory loss in the meetings, and (3) he had refused to provide Koch with access to its company documents in his possession without a court order. See Benson, 961 F.2d at 709 (finding no evidentiary error when the information was corroborated by other evidence). Chadwell's contrary statements in the notes would not have outweighed this direct testimony. Consequently, the jury had sufficient evidence to resolve the conflicting testimony presented at trial and the notes would have been cumulative evidence.

We therefore hold that the district court did not abuse its discretion in excluding Grotjohn's notes of Chadwell's statements as hearsay and as cumulative evidence.

Jury Instructions

We review jury instructions for clear prejudice, to determine whether the instruction fairly and adequately states the applicable law when reading the instructions as a whole. See Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998). In Minnesota, a claim of retaliatory discharge in violation of the Minnesota Whistleblower Statute requires application of the McDonnell Douglas burden-shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Rosen v. Transx Ltd., 816 F. Supp. 1364, 1369-70 (D. Minn. 1993) (Rosen) (utilizing the McDonnell Douglas burden-

-9-

shifting analysis in a Minnesota Whistleblower Statute retaliatory discharge claim). Under that framework, Chadwell first needed to establish a prima facie case that his termination was motivated by discrimination resulting from actions protected under the Minnesota Whistleblower Statute. He satisfied this burden by proving that he contacted the MPCA and was subsequently fired. Then the burden shifted to Koch to articulate a non-discriminatory reason for the discharge. Koch satisfied its burden by presenting evidence of Chadwell's misconduct, including his refusal to assist Koch in the environmental investigation, his claims of memory loss, his outbursts at work, and his intent to get fired to collect unemployment compensation. The district court properly instructed the jury regarding this burden-shifting in Jury Instructions Nos. 10 & 11, and Chadwell does not contend otherwise. At that point, the burden shifted back to Chadwell to show, by a preponderance of the evidence, that Koch's legitimate reason for the discharge was merely a pretext for retaliation. See Rosen, 816 F. Supp. at 1370. We must consider whether this burden was adequately and fairly represented in the jury's instruction.

> The instruction at issue stated:
>
> If you find that Koch has shown a legitimate reason for the adverse employment action, the ultimate burden of proof and persuasion is on Mr. Chadwell to show that the offered reason is a pretext for intentional retaliation, and that adverse employment action was motivated by his engaging in protected conduct. A reason is a pretext if it is not the true reason, but is instead given to hide the actual, retaliatory motivation.
>
> Your inquiry in this area is limited as to whether Koch's offered nonretaliatory reason for the adverse employment action is in fact the reason for its behavior, not whether the reason was poor, unwise, or erroneous.
>
> You may find that Koch had more than one reason for actions taken agasint Mr. Chadwell, some permissible and some not permissible. If you find that at least one reason was impermissible, as discussed above, and it motivated the adverse employment action against Mr. Chadwell, you

-10-

should find in favor of Mr. Chadwell.

Jury Instruction No. 12.

Chadwell argues that the district court improperly stated the applicable law because it required Chadwell to prove that Koch's retaliatory conduct constituted "intentional retaliation" when the Minnesota Whistleblower Statute does not contain an "intentional retaliation" requirement. Chadwell claims that the district court incorrectly applied the McDonnell Douglas burden-shifting analysis, and failed to actually shift the burden to Koch to articulate a legitimate and nonretaliatory reason for Chadwell's discharge once Chadwell had established his prima facie case, but instead improperly required Chadwell to prove an additional burden of "intentional retaliation." Chadwell proposed that the jury instructions, in order to accurately state Minnesota law, should have enabled him to prevail "if an illegitimate reason 'more likely than not' motivated the discharge decision." McGrath v. TCF Bank Savings, 509 N.W.2d 365, 366 (Minn. 1993) (requiring jury instructions to reflect the applicable law by allowing a plaintiff to prevail, despite other legitimate reasons for the discharge, "if an illegitimate reason 'more likely than not' motivated the discharge decision"). We disagree, and hold that the district court properly instructed the jury of its obligation consistent with the applicable Minnesota law.

The district court possesses broad discretion to formulate the language of jury instructions, Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 959 (8th Cir. 2000), and the instructions in the present case were accurate and fair to both parties. It is well settled that the Minnesota Whistleblower Statute requires proof of intentional retaliation. See Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997) (defining the causation requirement of a retaliatory discharge claim as based upon knowledge and intent); Rosen, 816 F. Supp. at 1369-70 (classifying pretextual retaliatory discharge under the Minnesota Whistleblower Statute as premised upon "intentional retaliation"); Larson v. New Richland Care Center, 538 N.W.2d 915, 920

(Minn. Ct. App. 1995) (construing the Minnesota Whistleblower Statute as an intentional tort created by statute, requiring an employee to "prove that the employer intentionally discharged or retaliated against" him or her). We conclude that the district court fairly and accurately stated the elements of a valid retaliation claim under Minnesota law, which understands retaliation as an inherently intentional concept and requires a showing of intentional actions causing the retaliation. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000) (articulating the ultimate question in a retaliatory discharge claim as "whether the employer intentionally discriminated," regardless of the implausibility or unpersuasiveness of the employer's proffered reason for discharge) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993)).

As a result, we hold that the district court did not abuse its discretion in formulating the jury instructions, which fairly and accurately stated Minnesota law.

Sufficiency of the Evidence

Denial of a motion for new trial is "'virtually unassailable' when the verdict is claimed to be against the weight of the evidence," Peerless Corp. v. United States, 185 F.3d 922, 927 (8th Cir. 1999), because the district court is closer to the evidence and better equipped to make fact and credibility determinations. We will reverse the district court only if there is an "absolute absence of evidence to support the jury's verdict." Id. Chadwell argues that the district court abused its discretion in denying his motion for a new trial because the jury's verdict was against the greater weight of the evidence. Chadwell claims that he presented overwhelming evidence to prove that he was terminated as a direct result of his report to the MPCA, an activity protected by the Minnesota Whistleblower Statute. Consequently, Chadwell characterizes the verdict as a miscarriage of justice warranting a new trial. We disagree.

Koch presented ample evidence at trial to substantiate the jury's findings that

Chadwell's misconduct motivated Koch's termination decision. The record includes evidence regarding Chadwell's attempts to get fired, his claims of memory loss, and his refusal to aid in Koch's investigation. It was reasonable for a jury to conclude that Chadwell's termination was justified as a result of his aberrant work behavior, despite his report to the MPCA, because whistleblowers are not insulated from company rules in the workplace. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). Such factual determinations are best left to the jury, and we hold that the district court correctly determined that sufficient evidence supported the jury's verdict.

We therefore hold that the district court did not abuse its discretion in denying Chadwell's motion for a new trial on the ground that the verdict was against the weight of the evidence.

Accordingly, the district court order is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.