**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A2486. WILLIAMS v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Jerrell Williams was convicted of burglary and forgery arising from a home invasion robbery. The jury deadlocked on armed robbery charges, but Williams subsequently pled guilty to and was convicted of two lesser counts of robbery. Williams appeals, challenging the sufficiency of the evidence as to the burglary conviction, the voir dire of a potential juror, the admission of evidence of a photographic lineup, the use of a prior conviction to impeach Williams' trial testimony, the state's closing argument, the replacement of a juror, the effectiveness of trial counsel, and the imposition of a recidivist sentence. However, there was overwhelming evidence of Williams' guilt, and the other claims of error are without

merit, constitute harmless error or were not preserved for appellate review. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Williams claims the evidence was insufficient to support his burglary conviction. The claim is without merit.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Brown v. State*, 318 Ga. App. 334, 334-335 (733 SE2d 863) (2012) (citations and punctuation omitted).

So viewed, the evidence shows that in the early morning hours of October 12, 2007, three men broke into a home, bound the two victims with duct tape, held the victims at knifepoint as they stole various items from the residence, and then fled in a silver Lincoln Town Car with a damaged trunk. A short time later, a police officer saw Williams with the car at a grocery store, where Williams used a credit card stolen from the victims to purchase groceries. As police were talking to Williams, his brother-in-law then arrived at the store in another car that had other items stolen from

2

the victims in it. Williams was arrested, and while in a jail holding cell, he bragged to others about the home invasion robbery and how he had kicked in the door of the victims' home. Police executed a search warrant at Williams' home and found a knife matching the description of the one used in the robbery. Both of the victims later identified it as looking like the knife that the robbers had "waved in their face[s]" and used to threaten them.

Contrary to Williams' argument, it is apparent that "[t]here was sufficient evidence for the jury to find [him] guilty beyond a reasonable doubt [of burglary.]" *Jackson v. State*, 217 Ga. App. 485, 487 (1) (458 SE2d 153) (1995) (citations omitted).

2. *Voir dire.*

Williams complains that the trial court erred by injecting its personal opinion into the voir dire of a potential juror. However, Williams has not identified any statement of personal opinion by the trial court, has failed to indicate where he raised such an objection, and the pages of the voir dire transcript he cites to do not contain such an objection. Williams therefore has not preserved the issue for appeal. *Brockman v. State*, 292 Ga. 707, 720 (7) (e) (739 SE2d 332) (2013). And to the extent Williams' enumerated error can be construed as a claim that the trial court should

3

have removed the potential juror for cause, it likewise presents nothing for review because Williams "did not move . . . to remove the juror for cause. Accordingly, this enumeration of error is waived. [Cits.]" *Ashford v. State*, 271 Ga. 148, 149 (2) (518 SE2d 420) (1999).

Moreover, even if he had not waived these objections, Williams has shown no error. "Control of the voir dire examination is within the sound discretion of the trial court and the court's discretion will not be interfered with unless the record shows a manifest abuse of that discretion. After viewing the record, we conclude that the voir dire in this case was sufficient to ascertain the fairness and impartiality of the prospective juror[]." *Brockman*, supra at 720 (8).

3. *Photographic lineup.*

Williams contends that the trial court erred in denying his motion to suppress evidence of an impermissibly suggestive photographic lineup shown to the two victims. But even if the line up was impermissibly suggestive, neither victim positively identified Williams as the perpetrator. While they indicated that it was close, both victims were unable to positively identify him from the lineup as one of their assailants. Given that there was no actual identification of Williams as a

4

perpetrator based on the photographic lineup, the trial court did not err in denying the motion to suppress.

Moreover, even "assuming error in the admission of the . . . photo lineup, we find any error harmless beyond a reasonable doubt in view of the overwhelming evidence of [Williams'] guilt, including his [possession of the getaway car, use of a victim's stolen credit card, having the knife from the incident in his house, and admission of his role in] the crime." *McGee v. State*, 209 Ga. App. 261, 262 (1) (433 SE2d 374) (1993) (citation omitted), overruled in part on other grounds in *Jones v. State*, 272 Ga. 900 (537 SE2d 80) (2000).

4. *Impeachment evidence.*

Williams testified at trial, and on cross-examination the state introduced six of his prior convictions to impeach him. Williams contends that it was error to admit one of those convictions as impeachment evidence because it was for a misdemeanor, rather than a felony, from South Carolina. But even if we presume error, "such an error does not require a new trial if the error is harmless . . . [and here,] the overwhelming evidence establishes [Williams'] guilt so as to make harmless the [alleged] error in admitting the prior-conviction[] evidence." *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011).

5

5. *Closing argument.*

Williams claims that his conviction must be reversed because the prosecutor was allowed to make the misleading statement during closing argument that Williams is a six-time convicted felon, when in fact he only has five prior felony convictions since the South Carolina conviction discussed above was only for a misdemeanor. However, Williams did not object at trial to the closing argument, and a "defendant's failure to object to the [s]tate's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Easter v. State*, 322 Ga. App. 183, 189 (6) (744 SE2d 374) (2013) (citation and punctuation omitted).

6. *Replacement of juror.*

Williams argues that the trial court erred in replacing one of the jurors with an alternate juror. We disagree.

The record shows that after the case had been submitted to the jury, one of the jurors stopped participating in the deliberations. The juror told the court that she suffers from post-traumatic stress disorder, that she had taken the maximum dose of prescribed medication for her mental health issue, that the stress of the jury deliberations was causing her to shut down mentally and emotionally, that she had

6

broken down and cried during the deliberations, and that she had physically removed

herself from the group by sitting on the floor in the corner.

> OCGA § 15-12-172 provides: If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. This Code section gives the trial court discretion to discharge a juror and replace him or her with an alternate at any time, and we will not reverse as long as the court's exercise of discretion has a sound legal basis.

*Wooten v. State*, 250 Ga. App. 686, 687 (3) (552 SE2d 878) (2001) (citations and

punctuation omitted). The juror's mental health concerns, stated inability to deliberate

further, and her "admitted actions during jury deliberations, constituted legal cause

for removal." *Norris v. State*, 230 Ga. App. 492, 495 (5) (496 SE2d 781) (1998)

(citations omitted). Accordingly, we cannot say that the trial court abused its

discretion in removing the juror and replacing her with an alternate juror.

7. *Ineffective assistance*.

Williams claims his trial counsel was ineffective in failing to obtain a mental

evaluation of him and to present evidence of his mental health history at sentencing.

To sustain his ineffective assistance claim, Williams "must show both that counsel's

performance fell below a reasonable standard of conduct and that, but for counsel's

7

deficient performance, there is a reasonable probability the outcome of the trial would have been different." *Anthony v. State*, 275 Ga. App. 274, 279 (6) (620 SE2d 491) (2005) (citation omitted). Williams has failed to show that his trial counsel's performance was deficient.

> It is true that where a defense attorney receives information from a reliable source that his client has had a history of psychiatric problems, but fails to adequately investigate this history, counsel fails to provide effective assistance. If trial counsel lacks notice of a prior psychiatric problem, however, the failure to investigate a defendant's mental health does not necessarily constitute deficient performance.

*Breland v. State*, 285 Ga. App. 251, 253 (2) (648 SE2d 389) (2007) (citations and punctuation omitted).

In this case, counsel testified at the motion for new trial hearing that he met with Williams more than 14 times to prepare for trial; that counsel had no difficulty communicating with Williams and saw no indication that he had any mental health problems; that Williams took an active role in assisting with his defense of the case; that Williams understood the charges and possible consequences, and had no difficulty understanding what was going on with the case; that counsel was never presented with any information showing that Williams had mental health issues; and that neither Williams nor his family told counsel of any mental health history.

8

Because this evidence that trial counsel lacked notice of any mental health issues supports the trial court's determination that counsel provided effective assistance, the "allegation of error on this ground presents no basis for reversal." Id. at 254.

8. *Recidivist sentence*.

The trial court sentenced Williams as a recidivist pursuant to OCGA § 17-10-7 (c), which provides:

> [A]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Williams contends that the case should be remanded for resentencing because the state introduced evidence that he had six purported prior felony convictions, but one of those convictions was actually the South Carolina misdemeanor offense mentioned above, for possessing a stolen motor vehicle with a value of $1,000. The state claims that while the offense was a misdemeanor in South Carolina, it was considered a felony in Georgia at the time of sentencing in this case. However, we need not make that determination, because even if we assume that the offense was a

9

misdemeanor, any error in admitting evidence of it was harmless since the five other felony convictions mandated recidivist sentencing under OCGA § 17-10-7 (c). See *Bostick v. Ricketts*, 236 Ga. 304, 307 (2) (223 SE2d 686) (1976) (any consideration of prior misdemeanors during recidivist sentencing was harmless in light of defendant's numerous prior felony convictions); *Johnson v. State*, 284 Ga. App. 724, 727 (3) (644 SE2d 544) (2007) (pretermitting whether court erred in considering prior first offender plea, proof of defendant's other felony convictions was sufficient to authorize punishment under OCGA § 17-10-7 (c)); *Jenkins v. State*, 235 Ga. App. 547, 550 (3) (c) (510 SE2d 87) (1998) (at sentencing, any error in discussion of defendant's prior arrests was harmless since recidivist sentence was authorized by defendant's prior felony conviction). Accordingly, there is no need to remand the case for resentencing.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*