**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0715. MURRAY v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Omega Murray was convicted of burglary. He appeals, challenging the sufficiency of the evidence, a variance between the indictment and proof at trial, the denial of a continuance, the refusal to remove a juror, and the use of his prior guilty pleas to impose a recidivist sentence. However, there was sufficient evidence to support the verdict, the variance complained of did not affect Murray's substantial rights, the trial court did not abuse its discretion in denying a continuance or in refusing to remove the juror in question, and Murray has shown no irregularity with any of the pleas used for recidivist sentencing. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Murray contends that there was insufficient evidence to support his burglary conviction. The contention is without merit.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Williams v. State*, 326 Ga. App. 418, 419 (1) (756 SE2d 650) (1) (2014) (citation omitted).

So viewed, the evidence shows that on June 7, 2011, a real estate broker called police to report that a man carrying a bag was seen going into a vacant house that she had listed for sale. An officer responded to the call and discovered that glass had been broken out of the back door, which was ajar. The officer saw Murray inside the kitchen, with a tool bag on the kitchen counter, using a screwdriver on a wall fixture. Screws were later found in Murray's pants pocket that matched those used to hold up a ceiling fan that had been taken down and placed by the back door of the house. Murray initially told the arresting officer that he was doing work on the house, but later claimed that he had gone inside the house to use the bathroom. At trial, Murray testified that he went on the property to urinate outside the house and that he then

went inside the house because he was "just being nosey." The real estate broker and the buyer of the house testified that they had not given anyone permission to enter the house.

Having reviewed all the evidence in the light most favorable to the verdict, we conclude "that there was sufficient evidence for the jury to find [Murray] guilty beyond a reasonable doubt of burglary. [Cit.]" *Williams*, supra at 419-420 (1) (punctuation omitted). See also OCGA § 16-7-1 (b) (defining burglary to include entering the dwelling house of another without authority and with the intent to commit a felony or theft therein).

2. *Indictment did not properly identify owner of house.*

Murray argues that the indictment did not give him adequate notice of the victim because it averred that he had entered the dwelling house of Willie Cotton, but the evidence presented at trial showed that sale of the house to Cotton was not actually closed until several days after the burglary. However, as the trial court correctly ruled, this did not constitute a fatal variance between the allegations in the indictment and the proof.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether

there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal. [Cits.]

*Delacruz v. State*, 280 Ga. 392, 396–397 (3) (627 SE2d 579) (2006).

Here, the indictment definitely informed Murray of the burglary charge against him and sufficiently identified the property in question by its full address. "The indictment did not mislead [Murray] in such a manner that impeded his ability to present a defense or surprise him at trial, and [he] cannot be subjected to a subsequent prosecution for the burglary of the residence in question." *Abney v. State*, 240 Ga. App. 280, 282 (2) (523 SE2d 362) (1999) (citation and footnote omitted). Accordingly, the fact that Cotton did not actually finalize his purchase of the house until several days after the burglary does not constitute a fatal variance. See *Abney*, supra at 281-282 (no fatal variance where burglary indictment charged defendant with "entering the dwelling house of McGee, but the evidence at trial showed that McGee neither owned the house nor resided there"); *Manemann v. State*, 147 Ga. App. 747, 748-749 (4) (250 SE2d 164) (1978) (no fatal variance where burglary indictment

4

alleged that property was owned by person who turned out to be the janitor, not the owner).

3. *Continuance.*

Murray claims that the trial court erred in denying his motion for a continuance after the state violated OCGA § 17-16-8 (a) by giving him the name of a witness less than ten days before trial. We find no reversible error in the denial of a continuance.

The record shows that the state gave Murray the name and contact information of an additional witness, the real estate broker, on September 29, 2012, and the trial started four days later on October 3rd. Murray's counsel orally moved for a continuance at the start of the trial, but the trial court denied the motion, telling counsel that she would have a chance to talk to the witness prior to her testimony. The state later called the broker to the witness stand. Before she testified, a bench conference was held at which Murray's counsel indicated that she had not yet talked to the witness. The trial court responded that the state could not prevent her from speaking to any witness, and Murray's counsel agreed. However, counsel did not request an opportunity to speak with the witness or seek any other relief. The bench conference ended and the witness then testified without objection.

"Under OCGA § 17-16-8 (a), the prosecutor is required to furnish to defense counsel a witness list not later than ten days before trial. . . . [T]he purpose of the statute is to prevent a defendant from being surprised at trial by a witness he has not had an opportunity to interview." *Rollinson v. State*, 276 Ga. App. 375, 378 (1) (c) (623 SE2d 211) (2005) (citations and punctuation omitted).

> OCGA § 17-16-6 sets forth the remedies for a defendant upon the [s]tate's failure to comply with OCGA § 17-16-8, providing that the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

*Wilkins v. State*, 291 Ga. 483, 486 (5) (731 SE2d 346) (2012). Under this statute, there is not "an exclusive remedy for a defendant or a fatal consequence to the [s]tate for failure to comply with the discovery mandates. Instead, it cloak[s] the trial court with the discretion to use its own judgment . . . and we will not reverse its decision absent an abuse of discretion." *Norris v. State*, 289 Ga. 154, 156 (2) (709 SE2d 792) (2011) (citations and punctuation omitted).

Here, the trial court did not abuse its discretion in denying a continuance and instead ruling that Murray would have an opportunity to interview the witness. See *Taylor v. State*, 305 Ga. App. 748, 753 (2) (a) (700 SE2d 841) (2010) (usually a

6

sufficient remedy for the defense to be afforded opportunity to interview the witness).

Thereafter, Murray acquiesced in the lack of an interview prior to the witness' testimony by failing to object or request additional relief. "The motion for continuance was not renewed, and he never requested the exclusion of testimony, nor does he complain in this [c]ourt that any . . . testimony should have been excluded. Appellant cannot complain of a ruling his own procedure or conduct aided in causing." *Norris*, supra at 157 (2) (citations and punctuation omitted).

Moreover, even if we were to presume error in the denial of a continuance, Murray has shown no harm. "[T]o be entitled to a new trial based upon the denial of [a] motion for a continuance, [an appellant] has the burden of showing that he was harmed by that denial. [Cits.]" *Hughes v. State*, 323 Ga. App. 4, 9-10 (3) (746 SE2d 648) (2013). Murray has made no proffer of evidence that he could have introduced had a continuance been granted, nor has he otherwise shown that a continuance would have benefitted him. See *Hughes*, supra at 10 (3) & n. 14 (absent proffer of testimony or other evidence to demonstrate harm, defendant fails to show reversible error in denial of a continuance). Accordingly, Murray has not carried his burden of showing harmful error.

4. *Refusal to remove a juror.*

During jury deliberations, one of the jurors informed the court that he might be uncomfortable rendering a decision because he recognized Murray's wife as a cashier at a store where he shops. The trial court questioned the juror about the situation. During that inquiry, the juror stated that he could be fair and make a decision based solely on the law and facts. Murray moved for a mistrial, but the trial court denied the motion and allowed the juror to return to deliberations. After the jury announced that it had a verdict, but before it was read in court, Murray moved to set aside the verdict on the ground that the trial court should have replaced the juror with an alternate. The trial court denied the motion, finding that there was no "basis to remove him."

Murray complains that the trial court erred in denying his motion for a mistrial and his motion to set aside the verdict. The complaints are without merit.

As an initial matter, we note that a mistrial would not have been an appropriate remedy in this situation; rather, the proper remedy, if necessary, would have been replacement of the juror with an alternate. OCGA § 15-12-172 provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated." Pursuant to this statute,

[t]he trial court must exercise its discretion in removing a juror, and it may effect such a removal even after deliberations have begun. There must be some sound basis upon which the trial judge exercises his discretion to remove the juror. . . . Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion.

*Butler v. State*, 290 Ga. 412, 417 (5) (721 SE2d 876) (2012) (citations and punctuation omitted).

In this case, the trial court inquired into the situation, during which the juror confirmed that he could make a decision based on the law and evidence. The court then properly exercised its discretion in refusing to replace the juror with an alternate. "Where a juror unequivocally states he could set aside his personal opinion and consider the evidence presented and the law as charged by the trial court and there is no evidence that the juror was incapable of rendering an impartial verdict, the trial court does not abuse its discretion by retaining the juror." *Prince v. State*, 277 Ga. 230, 236 (4) (587 SE2d 637) (2003) (citations omitted). Because the trial court did not abuse its discretion in refusing to remove the juror, we find no error.

5. *Recidivist sentencing.*

Murray asserts that the trial court erroneously considered his prior guilty pleas in sentencing him as a recidivist because the pleas were not willing and voluntary.

9

Although we find error in the procedure used by the trial court at the sentencing hearing, because Murray failed to make any showing of infirmity with regard to his prior guilty pleas, we find no reversible error.

Based on the shifting burdens of proof established by *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999),

> [w]hen a defendant collaterally attacks the validity of a prior guilty plea being used by the [s]tate for recidivist sentencing in a subsequent proceeding, the burden is on the [s]tate to prove both the existence of the prior guilty pleas and that the defendant was represented by counsel in all felony cases. Upon such a showing, the presumption of regularity is then applied and the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Defendant can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence. A silent record or the mere naked assertion by an accused that his prior counseled plea was not made knowingly and intelligently is insufficient.

*Horne v. State*, 318 Ga. App. 484, 494 (6) (733 SE2d 487) (2012) (citations and punctuation omitted). If the defendant is able to present evidence that a constitutional infirmity exists, the burden of proving the constitutionality of the plea then shifts back to the state. *Smith v. State*, 260 Ga. App. 785, 787 (581 SE2d 349) (2003).

At the sentencing hearing in the instant case, the state met its initial burden by tendering certified copies of Murray's prior guilty pleas. See *Sheppard v. State*, 300

Ga. App. 631, 638 (5) (686 SE2d 295) (2009). However, when Murray's counsel indicated that she wanted to attack the prior pleas as having not been knowingly and willingly entered, the trial court did not allow it, telling counsel that "[t]his is not the time or place to do that" and that Murray would have "to go through habeas corpus process" to attack the prior pleas. The trial court clearly erred in refusing to allow Murray to challenge the validity of his prior guilty pleas, since, after the state met its burden, he had the burden "to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea[s]." *Nash*, supra at 285.

Nevertheless, we note that after the trial court's erroneous decision at the sentencing hearing, Murray did not object and made no attempt to proffer the affirmative evidence he would have introduced if allowed. Moreover, at the motion for new trial, the court asked Murray's counsel to show the affirmative evidence she would have presented at the sentencing hearing. The only evidence she mentioned was that she would have had some of his family members testify about his limited education. She further conceded at the hearing that Murray had been represented by counsel at his pleas. Likewise, on appeal, Murray has not identified any evidence showing an infringement of his rights in the taking of his prior guilty pleas.

11

Consequently, even though the trial court clearly erred at the sentencing hearing by telling Murray that he could not challenge the voluntariness of his guilty pleas at that hearing, such error is not reversible since Murray has not pointed to any affirmative evidence showing an irregularity with any of the pleas. Compare *Grant v. State*, 326 Ga. App. 121, 132 (6) (756 SE2d 255) (2014) (physical precedent only) (at motion for new trial and on appeal, defendant pointed to evidence in the record showing that he was not informed of his right to counsel and also submitted affidavit evidence, thus making affirmative showing of infirmity in taking of plea).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*