**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A2161. THOMPSON v. THE STATE.

BOGGS, Judge.

A jury convicted Harold Wesley Thompson of felony shoplifting, aggravated assault, and possession of methamphetamine. Based on the drug possession conviction and its determination that Thompson was a recidivist, the trial court sentenced Thompson to 30 years, with the first 10 years in confinement without the possibility of parole and the remainder on probation. Thompson filed a motion for new trial, which the trial court denied. On appeal, Thompson contends that the trial court erred in admitting a store shoplifting report under the business record exception to hearsay; that there was insufficient evidence to convict him of felony shoplifting and aggravated assault; that his sentence for possession of methamphetamine

constituted cruel and unusual punishment; and that the trial court erred in sentencing him as a recidivist. For the following reasons, we affirm.

Following a criminal conviction, we view the evidence in the light most favorable to the verdict. *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that on November 28, 2010, Thompson entered a Costco store in Catoosa County. The store's loss prevention officer, who was responsible for monitoring customers for suspicious activity, saw Thompson pick up a camera and a video game console and take them to a different area of the store. Thompson then pulled out a "razor blade or box cutter type knife," used it to remove the camera from its packaging, and placed the camera in his pants pocket. Thompson also removed the game console from its box, hid the box in a suitcase on a shelf in the store, and shoved the game console down into the waistband of his pants. The officer notified the assistant manager and called the police about the suspected shoplifter.

The loss prevention officer followed Thompson to the exit of the store, where the assistant manager was waiting and observed the encounter. When Thompson approached the exit door, the officer confronted him and ordered him not to leave. Thompson pushed through the officer, who fell to the ground with Thompson on top

2

of him; with both of them falling outside the store. Thompson then jumped up, took a few steps forward into the parking lot, and pulled a knife out of his pocket when he was "maybe 15 feet" from the officer. He waived the knife towards the officer "[i]n a threatening manner." When the officer saw the knife, he stepped back, "put his hands back," and stopped attempting to physically apprehend Thompson. Thompson then took off running across the parking lot.

Police who had responded to the 911 call saw Thompson running through the store parking lot. The loss prevention officer and assistant manager stepped outside of the store, pointed at Thompson, who the police then ordered to the ground and apprehended. After speaking with the store employees, a police lieutenant searched Thompson and found the camera in his pants pocket and the game console in the waistband of his pants, as well as a "razor knife," a glass pipe containing methamphetamine, a small digital scale, and a waterproof container with "plastic baggy squares" inside it. The police lieutenant later testified that, based on his training and experience, the type of container and "plastic baggy squares" he found on Thompson were commonly used for storing and transporting illegal drugs.

Thompson was indicted on one count of felony shoplifting, two counts of aggravated assault, and one count of possession of methamphetamine. The store's

loss prevention officer did not testify at trial. Rather, the State called the store's assistant manager, who testified to what he had observed in the exit area of the store between Thompson and the loss prevention officer.[1] Through the assistant manager, the State also introduced, over a defense hearsay objection, a report prepared by the loss prevention officer on the day of the shoplifting incident that, among other things, identified Thompson as the suspect, provided a physical description of him, and listed the stolen items and their prices. The trial court allowed the admission of the loss prevention report under the business records exception to hearsay. Additionally, the State called as witnesses the police lieutenant involved in Thompson's apprehension and a forensic chemist from the State crime lab who confirmed that the pipe found on Thompson contained methamphetamine. After the State rested, Thompson elected not to testify and did not call any defense witnesses.

The trial court directed a verdict on one of the two aggravated assault counts, and the jury convicted Thompson on the remaining counts. At the sentencing hearing, the State introduced certified copies of Thompson's prior convictions in aggravation

---

[1] The assistant manager also testified to what the loss prevention officer said he had observed while following Thompson around the store. Thompson waived any hearsay objection to this testimony from the assistant manager by failing to object on that ground at trial, and the testimony thus was "legal evidence and admissible." OCGA § 24-8-802.

of punishment. Because Thompson had a prior conviction for possession of a Schedule II narcotic, the sentencing range for his possession of methamphetamine conviction was imprisonment "for not less than five years nor more than 30 years" based on the sentencing statute in effect at the time of his offense. OCGA § 16-13-30 (c) (2010). In light of its finding that Thompson was a recidivist under OCGA § 17-10-7 (c), the trial court sentenced him to 30 years for possession of methamphetamine, with the first 10 years served in confinement without the possibility of parole and the remainder on probation.[2] This appeal followed.

1. Thompson contends that the trial court committed reversible error in admitting the loss prevention report under the business records exception to hearsay, OCGA § 24-8-803 (6).[3] Because the jury trial in this case was conducted in April

---

[2] On the aggravated assault count, the trial court sentenced Thompson to 20 years, to serve 10 years in confinement and the remainder on probation, and on the felony shoplifting account, the court sentenced him to serve 10 years in confinement. Both sentences ran concurrent to Thompson's 30-year sentence for possession of methamphetamine.

[3] Thompson also argues that the admission of the loss prevention report violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). However, Thompson waived any objection under *Crawford* by failing to object on this ground at trial. See *Melendez-Diaz v. Massachusetts*, 557 U. S. 305, 314, n. 3 (129 SCt 2527, 174 LE2d 314) (2009); *Lane v. State*, 324 Ga. App. 303, 314 (6) (750 SE2d 381) (2013).

2013, Georgia's new Evidence Code applies. See Ga. Laws 2011, p. 99, § 101. Under the new Evidence Code, business records are admissible as an exception to hearsay if certain criteria are satisfied:

> Unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness and subject to the provisions of Chapter 7 of this title,[4] a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses [is admissible], if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification. . . .

OCGA § 24-8-803 (6).

"This Court reviews a trial court's ruling on the admission of evidence under an abuse of discretion standard." (Citation and punctuation omitted.) *Gant v. State*, 313 Ga. App. 329, 335 (2) (721 SE2d 913) (2011); see also *Rock*, supra, 922 F2d at

---

[4] Chapter 7 addresses "Opinions and Expert Testimony."

6

277 (II) (A). "A proper application of the abuse-of-discretion review recognizes 'the range of possible conclusions the trial judge may reach,' and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court 'even though we would have gone the other way had it been our call.'" (Citation, punctuation and footnote omitted.) *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014).

In the present case, the police lieutenant testified that after Thompson was apprehended, he returned the stolen camera and game console to the store's loss prevention officer so that he could complete his report and check the prices of the items. The loss prevention officer at that point prepared the loss prevent report in which he identified Thompson by his first and middle name as the shoplifter, provided a physical description of Thompson, listed the assistant manager as a witness, and identified the stolen items and their prices. Thompson argues that the loss prevention report did not qualify under the business records exception because it was prepared in anticipation of prosecution, and "did not have the degree of trustworthiness associated with business records." We disagree.

It is true that a record prepared in anticipation of prosecution is not made in the regular course of business. Cf. *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706)

7

(2006). But the type of report created by Costco cannot be used by Costco to anticipate prosecution, because the parties to the prosecution are the State and the shoplifting suspect. See, e.g., *Brown v. State*, 274 Ga. 31, 33-34 (1) (549 SE2d 107) (2001) (police report prepared in State prosecution for possession of cocaine). While Costco may have an interest in seeing that a shoplifting suspect is prosecuted and incarcerated and thus no longer able to shoplift from its store, it simply is not a party to any potential prosecution and cannot anticipate what action the State may take, as not all shoplifters are apprehended and not all apprehended shoplifters are prosecuted.

Even without considering Costo's non-party status, Costco did not make the report at the request of the State. See *United States v. Blackburn*, 992 F2d 666, 670 (7th Cir. 1993) (report prepared at request of FBI in robbery case). Indeed, the officer on the scene testified that he was not sure that Costco was "familiar with what we needed for that criminal case." Since Costco prepares a loss prevention report in every instance of shoplifting, concerns about reliability and trustworthiness are minimized. Therefore, under the facts of this case, Costco's report was not made in anticipation of prosecution and is therefore admissible.

The dissent cites Professor Milich for the proposition that "[i]ncident reports prepared by a business after an accident or other event likely to lead to litigation are

8

*normally* inadmissible as business records, even if the business routinely prepares such records in such circumstances." (Emphasis supplied.) Paul S. Milich, Georgia Rules of Evidence, § 19:11 pp. 760-761 (2014-2015). Milich relies upon *Palmer v. Hoffman*, 318 U. S. 109 (63 SCt 477, 87 LE2d 645) (1943), for this conclusion. The *Palmer* Court considered whether the report regularly recorded was for "the systematic conduct of the enterprise." Id. at 114 (I). *Palmer* was decided before the formulation and adoption of the Federal Rules of Evidence. See *BP Amoco Chemical Co. v. Flint Hills Resources, LLC*, 2009 U.S. Dist. LEXIS 131268 at 17 (III) (N.D. Illinois 2009). The *Palmer* Court analyzed the business record standard found in 28 U.S.C. § 695, which contained language similar to the language of OCGA § 24-8-803 (6), but required only that the record was "made in the regular course of any business." *Palmer*, supra, 318 U. S. at 111 (I) n.1. OCGA § 24-8-803 (6) (C) provides that the record may be admissible if "kept in the course of a regularly conducted business activity." The statute incorporated language equivalent to the "systematic conduct of the enterprise" language in *Palmer*.

The *Palmer* Court held that the basis for the requirement that records are made for the "systematic conduct of the enterprise" is the "probability of trustworthiness of records because they were routine reflections of the day to day operations of a

business." Id. at 113-114 (I). It explained that to be admissible, and as now required by OCGA § 24-8-803 (6) (C), the regularly produced reports must have something to do with the management or operation of the business. Id. at 113 (I). The court concluded that a statement made by a train engineer during an interview by an assistant superintendent and a representative of the state public utilities commission about a grade crossing accident was calculated for use in court, and not for the business of railroading. Id. at 112-114 (I). Thus, it lacked the reliability inherent in a record made for the systematic conduct of an enterprise and was therefore inadmissible.

As noted by Professor Milich, the rule generally prohibiting the admission of an incident report is not absolute. Certainly the day-to-day operations of a retail business include preventing the loss of the merchandise it sells and keeping a record of that merchandise, as the title of the report suggests.[5] The inclusion of other

---

[5]The dissent argues that the State failed to come forward with evidence that the reports were "made for the systematic conduct of the business as a business" or as required under the new Evidence Code, "kept in the course of a regularly conducted business activity." But the report itself and the testimony of the records custodian satisfy this requirement. Costco is in the business of selling merchandise, and the loss prevention report is a record of merchandise lost by shoplifting that is entered into the business filing system. Indeed, Costco employs a loss prevention agent. The report was therefore "kept in the course of a regularly conducted business activity," satisfying the third foundational requirement of OCGA § 24-8-803 (6) (C).

information, such as the identity of any witnesses to a shoplifting incident and whether police were called to the scene, does not alter the analysis here. As Professor Milich explains further, "[t]he more routine the type of record involved, the more likely the business has developed, though repetition and experience, a reliable system for creating the records." Milich, supra at § 19:11 p. 760. Moreover, "if the report is routinely prepared in a response to an event that normally would not lead to litigation, but in this instance subsequently does, the report may be admissible under the business record exception." Milich, supra at § 19:11 pp. 760-761. See, e. g., *Hill Aircraft & Leasing Corp. v. Cintas Corp.* 169 Ga. App. 747, 749-750 (2) (315 SE2d 263) (1984) (physical precedent only) (memorandum made by employer concerning facts of employees' termination admissible as routine business entry).[6] The routinely prepared report here meets these criteria.

Finally, we conclude that because the foundational elements of OCGA § 24-8-803 (6) were satisfied here, "a rebuttable presumption of trustworthiness of the evidence is created." Ronald L. Carlson & Michael Scott Carlson, Carlson on

---

[6] While technically physical precedent only, *Hill Aircraft & Leasing Corp.*, supra, has been cited repeatedly with approval and without notation of its precedential status. See, e. g., *Jerkins v. Jerkins*, 300 Ga. App. 703, 707 (3) (686 SE2d 324) (2009).

11

Evidence, p.546 (3d ed. 2015).[7] And, as the opponent to the admission of the evidence, Thompson was required to rebut this presumption, which he failed to do. The trial court therefore did not err in allowing the admission of the loss prevention report under the business record exception to the hearsay rule.

Because we conclude that the loss prevention report was properly admitted, we need not address Thompson's claim that insufficient evidence supports this count because the report was the sole source of value for the felony shoplifting conviction. See OCGA § 16-8-14 (b) (2).

2. Thompson further contends that the evidence was insufficient to support his conviction for aggravated assault. We disagree.

A person may be found guilty of aggravated assault if the State proves (1) an assault and (2) aggravation by use of any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. The State may prove an assault by showing that the defendant committed an act that placed the victim in reasonable apprehension of immediately receiving a violent injury.

---

[7]As noted by Carlson, OCGA § 24-8-803 (6) closely tracks Federal Rule 803 (6). Carlson & Carlson, supra at 543.

12

(Citations and punctuation omitted.) *Myrick v. State*, 325 Ga. App. 607, 608 (1) (754 SE2d 395) (2014). See OCGA §§ 16-5-20 (a) (2) (2010);16-5-21 (a) (2) (2010). The aggravated assault count of the indictment averred in relevant part that Thompson made an assault upon the store's loss prevention officer "with a Sheffield razor knife, an object which when used offensively against a person is likely to or actually does result in serious bodily injury."

At trial, the store's assistant manager testified regarding the encounter between Thompson and the loss prevention officer that he witnessed in the exit area of the store. The assistant manager testified that, after pushing down the loss prevention officer and falling on top of him, Thompson jumped up, took a few steps forward, and pulled a knife out of his pocket. According to the assistant manager, Thompson held the knife out in front of him and waived it towards the officer "[i]n a threatening manner," and when the officer saw the knife, he stepped back, "put his hands back," and stopped trying to physically apprehend Thompson. Thompson then took off running through the parking lot. The police lieutenant who subsequently apprehended Thompson described the knife found on his person as a "razor knife," and the State introduced the knife into evidence. This combined testimony was sufficient to sustain Thompson's conviction for aggravated battery. See, e. g., *Hartley v. State*, 299 Ga.

13

App. 534, 534-535, 537 (1) (683 SE2d 109) (2009). In reaching this conclusion, we note that the victim of the aggravated assault, the loss prevention officer, was not required to testify to sustain Thompson's conviction, given the eyewitness testimony of the assistant manager. See, e. g., *Bostic v. State*, 294 Ga. 845, 847 (1) (757 SE2d 59) (2014) (noting that "the failure of a victim of an assault to testify at trial does not necessarily result in the evidence against the defendant being insufficient"); *Petro*, 327 Ga. App. at 257-258 (1) (a) (although victim did not testify, testimony of eyewitness who saw the encounter was sufficient to sustain aggravated assault conviction).

Thompson emphasizes that the assistant manager testified that Thompson was "maybe 15 feet" from the loss prevention officer when he waived the knife towards him in a threatening manner, and argues that, as a result, the officer was not in reasonable apprehension of immediately receiving a violent injury as a matter of law. We disagree. To prove that a victim had a reasonable apprehension of immediately receiving a violent injury,

> there need not be an actual present ability to commit a violent injury
> upon the person assailed, but if there be such a demonstration of
> violence, coupled with the apparent ability to inflict the injury, so as to
> cause the person against whom it is directed reasonably to fear the injury

14

unless he retreat to secure his safety, and under such circumstances he is compelled to retreat to avoid an impending danger, the assault is complete, though the assailant may never have been within actual striking distance of the person assailed.

(Citation and punctuation omitted.) *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) (1994). Moreover, "[t]he focus of a reasonable apprehension of harm is on the apprehension of the victim, and it is for the factfinder to determine whether the victim's apprehension was reasonable." (Citations and punctuation omitted.) *Bearden v. State*, 291 Ga. App. 805, 807 (662 SE2d 736) (2008).

As noted above, the assistant manager testified that in response to Thompson brandishing the razor knife, the loss prevention officer stepped back, put his hands back, and stopped trying to physically apprehend Thompson. Hence, the evidence, construed in favor of the prosecution, showed that even assuming Thompson was not in actual striking distance of the loss prevention officer, the only reason for that distance was that he brandished the knife in a manner that caused the officer to stop moving towards Thompson out of fear for his safety. Under these circumstances, a rational jury could find that the loss prevention officer was placed in reasonable apprehension of immediately receiving a violent injury, even if Thompson was not within actual striking distance with the knife. See *King*, 213 Ga. App. at 269.

15

3. Thompson also contends that the trial court's decision to sentence him to 30 years for possession of methamphetamine, with the first 10 years served in confinement without the possibility of parole and the remaining 20 years on probation, constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. We do not agree.

The Eighth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A punishment is cruel and unusual "in the rare circumstance where the defendant's sentence is 'grossly disproportionate' to the underlying crime." *Middleton v. State*, 313 Ga. App. 193, 194 (721 SE2d 111) (2011). See *Graham v. Florida*, 560 U.S. 48, 60 (II) (130 SCt. 2011, 176 LE2d 825) (2010).

> With respect to whether a sentence is grossly disproportionate, courts must begin by comparing the gravity of the offense and the severity of the sentence. If this threshold comparison does not create an inference of gross disproportionality, the Eighth Amendment analysis extends no further. It is the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.

(Citations and punctuation omitted.) *Jones v. State*, 325 Ga. App. 845 (1) (755 SE2d 238) (2014). If the defendant's sentence falls within the statutory range of punishment for the crime set by the legislature, a presumption arises that the sentence does not violate the Eighth Amendment, and the "presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience." (Citation omitted.) *Cuvas v. State*, 306 Ga. App. 679, 683 (2) (703 SE2d 116) (2010).

Thompson concedes that his sentence fell within the statutory range for possession of methamphetamine under the sentencing provision applicable to a second drug possession conviction that was in effect at the time he committed the current offense. See OCGA § 16-13-30 (c) (2010) (authorizing "imprisonment for not less than five years nor more than 30 years" for second or subsequent convictions of certain drug offenses). But Thompson argues that his sentence nevertheless was grossly disproportionate to the offense, given that the General Assembly subsequently amended OCGA § 16-13-30 to reduce the sentence to one-to-three years for the amount of methamphetamine he possessed in this case. See OCGA § 16-13-30 (c) (1) (2014). Quoting from *Humphrey v. Wilson*, 282 Ga. 520, 528 (3) (c) (652 SE2d 501) (2007), Thompson argues that "no one has a better sense of the evolving standards

17

of decency in this State than our elected representatives," and that the statutory amendments to OCGA § 16-13-30 thus "reflect a decision by the people of this State that the severe felony punishment imposed on [defendants under the prior law] makes no measurable contribution to acceptable goals of punishment." While we are sympathetic to Thompson's argument here, we are constrained to uphold the sentence existing at the time of his offense.

In *Humphrey*, 282 Ga. at 520-521 (1), the defendant received an 11-year sentence, with 10 years to serve in confinement and 1 year on probation, for aggravated child molestation for engaging in consensual oral sex when he was 17 years old and the victim was 15 years old. Relying in part on the General Assembly's 2006 amendment to the aggravated child molestation statute, which would have afforded the defendant misdemeanor punishment if it had been enacted before he committed his crime, our Supreme Court held that the defendant's sentence was grossly disproportionate to the offense and thus constituted cruel and unusual punishment. Id. at 527-530 (3) (c).[8]

---

[8] We applied *Humphrey* in another aggravated child molestation case involving nonviolent sexual contact between teenagers. See *Morris v. State*, 300 Ga. App. 355, 358-359 (685 SE2d 348) (2009).

Subsequently, however, in *Bradshaw v. State*, 284 Ga. 675, 678 (2) (a) (671 SE2d 485) (2008), our Supreme Court rejected an expansive reading of *Humphrey* and "decline[d] to engraft onto every statutory change enacted by the General Assembly an interpretation that the legislature is thus making a pronouncement of constitutional magnitude." (Citation and punctuation omitted.) The Supreme Court concluded that the most recent legislative pronouncement on a punishment "does not preclude or in any manner limit [a court's] evaluation of [a defendant's] sentence to determine whether it comports with the constitutional prohibition against cruel and unusual punishment." (Citation and punctuation omitted.) Id. The Court then went on to examine the gravity of the offense and the severity of the sentence to determine whether the case raised a threshold inference of gross disproportionality. Id. at 679-680 (2) (b), (c). Thus, when read together, *Humphrey* and *Bradshaw* make clear that a statutory amendment by the legislature is one factor to consider as part of a court's analysis into gross disproportionality, but it is not dispositive; courts still must examine the gravity of the offense and the severity of the sentence to determine whether a threshold inference of gross disproportionality has been raised.

Applying these principles to the present case, we conclude that Thompson has failed to show that this is one of those rare cases that raises a threshold inference of

19

gross disproportionality, even though the General Assembly has amended OCGA § 16-13-30 to reduce the range of punishment for possession of methamphetamine. Notably, while the statute has been amended to reduce the range of punishment, the General Assembly included a savings clause making clear its intention to maintain the sentencing structure for crimes committed prior to the effective date of any amendment. See Ga. L. 2012, p. 899, § 9-1(b)/HB 1176. Therefore, the General Assembly itself has made clear that it did not intend for the changes to OCGA § 16-13-30 reducing the range of punishment to serve as "a pronouncement of constitutional magnitude" or "to preclude or in any manner limit" our evaluation of a defendant's sentence under the old version of the statute "to determine whether it comports with the constitutional prohibition against cruel and unusual punishment." (Citation and punctuation omitted.) *Bradshaw*, 284 Ga. at 678 (2) (a).

Here, given the fact that Thompson faced a potential sentence of 30 years in confinement, his sentence of 10 years in confinement followed by 20 years on probation does not raise a threshold inference of gross disproportionality. Accordingly, Thompson has failed to demonstrate that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. See *Bragg v. State*, 296 Ga. App. 422, 425-426 (674 SE2d 650) (2009) (defendant's sentence to 20 years, with 10

20

years in confinement and the remainder on probation, for child molestation, did not raise threshold inference of gross disproportionality, despite certain legislative amendments to the statute in question).

4. Lastly, Thompson contends that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (c). According to Thompson, five of his prior felony cases should have been considered "consolidated for trial" under OCGA § 17-10-7 (d), thereby rendering his recidivist designation improper. We discern no reversible error by the trial court.

OCGA § 17-10-7 (c) states that any person convicted of three prior felonies, upon conviction of a fourth felony, must "serve the maximum time provided in the sentence of the judge . . . and shall not be eligible for parole until the maximum sentence has been served." But if two or more of the prior felony convictions were "consolidated for trial," they must be treated as one prior conviction for purposes of recidivist sentencing. OCGA § 17-10-7 (d). "In determining whether separate offenses should be considered 'consolidated for trial' for purposes of recidivist sentencing, we look to the totality of the circumstances." (Citations and footnote omitted.) *Stone v. State*, 245 Ga. App. 728, 728 (538 SE2d 791) (2000).

21

"If separate offenses are charged under separate charging instruments and a defendant is sentenced under separate orders, the offenses are generally not consolidated for trial within the meaning of OCGA § 17-10-7 (d)." (Citation and punctuation omitted.) *Baker v. State*, 306 Ga. App. 99, 103 (2) (701 SE2d 572) (2010). If the prior offenses "were the result of separate indictments and a separate order of sentence was entered on each indictment," there is no consolidation even if the sentences for the offenses were entered on the same day and were run concurrent to one another. *Philmore v. State*, 263 Ga. 67, 70 (6) (428 SE2d 329) (1993).

At the sentencing hearing, the State introduced certified copies of the indictment, guilty pleas, and sentences received by Thompson for multiple prior felony offenses that were charged in six different cases, hereinafter referred to as the Drug Possession Case and the Five Theft Cases. In the Drug Possession Case, Thompson pled guilty to possession of methadone and was sentenced in May 2011. In the Five Theft Cases, Thompson pled guilty on the same day in May 1998 to multiple theft-related offenses. Each of the Five Theft Cases involved different incidents involving different victims and different property and had its own accusation or indictment. The sentences entered in the Five Theft Cases were documented on separate sentencing orders.

Thompson argues that his convictions in the Five Theft Cases should have been treated as consolidated for trial and thus treated as one prior felony offense. Thompson emphasizes that, although the trial court entered separate sentencing orders for the Five Theft Cases, the sentencing order entered in the Fifth Theft Case includes a provision under "other conditions of probation" that addresses restitution that must be paid by Thompson for property that was the subject of the Third and Fourth Theft Cases. Additionally, the sentencing order entered in the Second Theft Case incorporates by reference all of the conditions of probation imposed in the Fifth Theft Case.

The First Theft Case had a separate indictment and sentencing order from the other Theft Cases and was not referenced in the sentencing orders entered in the other Theft Cases. Consequently, the First Theft Case could be treated as a separate prior felony offense from the other four Theft Cases for purposes of recidivist sentencing. See *Philmore*, 263 Ga. at 69 (6). Therefore, even if we were to assume without deciding, that the trial court erred in not treating the Second, Third, Fourth, and Fifth Theft Cases as consolidated for trial, the Theft Cases still could provide two of the three prior felony offenses necessary for the imposition of a recidivist sentence under OCGA § 17-10-7 (c).

Thompson's conviction in the Drug Possession Case provided the third prior felony offense. Accordingly, any error by the trial court in failing to treat four of the Theft Cases as consolidated for trial under OCGA § 17-10-7 (d) was harmless, given that, even with the error, there still were three prior felony offenses authorizing recidivist sentencing under OCGA § 17-10-7 (c). See *Williams v. State*, 326 Ga. App. 418, 423 (8) (756 SE2d 650) (2014) (even if trial court erred in determining number of prior felonies, error was harmless because there still were a sufficient number of prior felonies to authorize defendant's recidivist sentence). It follows that Thompson was properly sentenced as a recidivist.

*Judgment affirmed. Ellington, P. J., Dillard and Branch, JJ., concur. Doyle, P. J., concurs in Divisions 2, 3 and 4 and in the judgment . Barnes, P. J., and Miller, J., concur in Divisions 2-5 and dissents in Division 1.*

A14A2161.  THOMPSON v. THE STATE.

BARNES, Presiding Judge, concurring in part and dissenting in part.

Because the store shoplifting report relied upon by the prosecution was prepared in anticipation of litigation, the trial court erred in admitting it under the business record exception to hearsay.  And admission of the shoplifting report harmed Thompson because it provided the only evidence of the value of the items stolen from the store to support his felony shoplifting conviction. We therefore should reverse Thompson's conviction for felony shoplifting.  Because the majority concludes otherwise, I respectfully dissent to Division 1 of the majority opinion.[1]

Under Georgia's new evidence code, a document is admissible under the business record exception to hearsay if, among other things, the document is of the type routinely made in the regular course of business.  OCGA § 24-8-803 (6).  But it is well-established that a record prepared in anticipation of litigation is not made in the "regular course" of business and lacks the requisite degree of reliability and trustworthiness for admission under the business record exception. See *Stewart v. State*, 246 Ga. 70, 74 (3) (268 SE2d 906) (1980) (forms containing payroll

---

[1] I concur fully in Divisions 2-5.

information inadmissible as business records because prepared in anticipation they would be used as part of government investigation and litigation); *Goss v. Mathis*, 188 Ga. App. 702 (373 SE2d 807) (1988) (documents providing estimation of expenses and value of labor inadmissible as business records because prepared in anticipation of litigation); *Reach Out v. Capital Assoc.*, 176 Ga. App. 585, 585-586 (1) (336 SE2d 847) (1985) (report listing outstanding rental payments and amounts owed on lease inadmissible as business record because prepared in anticipation of litigation).[2] Thus, "[i]ncident reports prepared by a business after an accident or other event likely to lead to litigation are normally inadmissible as business records." Paul S. Milich, Ga. Rules of Evidence, § 19:11, p. 758 (2013–2014 ed.). See *Palmer v. Hoffman*, 318 U.S. 109, 113-115 (63 SCt 477, 87 LE 645) (1943) (accident report prepared by railroad after train accident was inadmissible as business record because "those reports are not for the systematic conduct of the enterprise as a railroad business" but rather "are calculated for use essentially in the court"); *Scheerer v.*

---

[2] See also *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183-1184 (11th Cir. 2006) (report documenting airline passenger information was inadmissible as business record because prepared in anticipation of trial); *Noble v. Alabama Dept. of Environmental Mgmt.*, 872 F.2d 361, 366-367 (11th Cir. 1989) (letter with attachments inadmissible as business record because prepared in anticipation of litigation).

2

*Hardee's Food Sys.*, 92 F.3d 702, 706-707 (8th Cir. 1996) (incident report prepared by restaurant after slip-and-fall accident was inadmissible as business record); *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991) (accident reports and logs documenting plaintiff's injuries were inadmissible as business records). Incident reports are excluded from the business record exception under the rationale that they are prepared by a business "with the knowledge that the incident could result in litigation" and therefore are susceptible to manipulation, *Scheerer*, 92 F.3d at 706-707, and are not "made for the systematic conduct of the business as a business" but rather have their "primary utility . . . in litigating." *Palmer*, 318 U.S. at 112, 114.

While we review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard, *Owens v. State*, 329 Ga. App. 455, 458 (1) (b) (765 SE2d 653) (2014), a trial court's discretion is not without limits. See *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) (noting that abuse-of-discretion standard "does not permit a 'clear error of judgment' or the application of 'the wrong legal standard'") (footnote omitted). We have not hesitated to reverse a trial court that erroneously admits a document under the business record exception to the hearsay rule, where the document was prepared in anticipation of litigation rather than in the regular course of business. See, e.g., *Reach Out*, 176 Ga. App. at

3

585-586 (1). This is because the presumption of reliability and trustworthiness normally afforded business records "collapses when any person in the process is not acting in the regular course of business." (Citation and punctuation omitted). *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991).

In the present case, the evidence introduced at trial reflects that after the police lieutenant apprehended Thompson in the store parking lot, the lieutenant returned the stolen camera and game console to the store's loss prevention officer so that the officer could "complete his report and check the prices on the items, the things that are necessary for that case file." The loss prevention officer at that point prepared a report about the shoplifting incident (the "Shoplifting Report"). He checked the box at the top of the form for "shoplifting," listed the time and date of the incident, identified Thompson by name as the shoplifter, provided a physical description of Thompson, listed the assistant manager as a witness, and identified the stolen items and their prices. The Shoplifting Report also included a section entitled "Disposition Information" in which the loss prevention officer listed the time the police were called, the time they arrived on the scene, the time Thompson was detained by the police, the name of the responding police officer, the police officer's identification number and telephone number, and the police department case number. The loss

4

prevention officer checked a box on the Shoplifting Report indicating that the returned merchandise would be "retained as evidence at warehouse," and the bottom of the report included an instruction for the person completing it to provide a "copy to police department."

Given this record, the evidence shows that the loss prevention officer prepared the Shoplifting Report to memorialize the facts surrounding the shoplifting incident with the anticipation that Thompson would be criminally prosecuted, and, therefore, that the report was prepared "in anticipation of litigation" such that it could not qualify as a business record. See *Scheerer*, 92 F.3d at 707 (concluding that the "incident report shows on its face that it was prepared in anticipation of litigation" in light of the information sought in the report and the directions on the report to the employee completing it). And although the store's assistant manager testified that reports were routinely prepared by loss prevention agents whenever there was a shoplifting incident, his testimony did not transform the Shoplifting Report into an admissible business record. See Milich, supra, § 19:11, p. 758 (incident reports excluded "even if the business routinely prepares such records in such circumstances"). See also *Palmer*, 318 U.S. at 113 (noting that "the fact that a company makes a business out of recording its employees' versions of their accidents

5

does not put those statements in the class of records made 'in the regular course' of the business"); *Reach Out*, 176 Ga. App. at 585-586 (1) ("Although the appellee's collection manager uses the appropriate legal incantation in his description of the referral status report, the report fails to qualify as a business record[.] Rather, the report was an 'in-house' information summary prepared in anticipation of litigation."). Accordingly, the trial court erred in admitting the Shoplifting Report as a business record.

In reaching the opposite conclusion, the majority maintains that Thompson failed to rebut "the presumption of trustworthiness" afforded the Shoplifting Report. However, because the Shoplifting Report was prepared in anticipation of litigation, it was not made in the "regular course" of business. See *Echo Acceptance Corp. v. Household Retail Servs.*, 267 F3d 1068, 1091 (10th Cir. 2001) (noting that "one who prepares a document in anticipation of litigation is not acting in the regular course of business."). One of the foundational elements of OCGA § 24-8-803 (6) thus was not satisfied, and no presumption was created. See Ronald & Michael Scott Carlson, Carlson on Evidence, p.546 (3d ed. 2015) (presumption of trustworthiness applies "[w]hen a party offers documentary evidence under Rule 803 (6) and *establishes the requisite foundation for its admission*") (emphasis supplied). See also *Rock*, 922 F.2d

6

at 279 (presumption of trustworthiness "collapses" when document not prepared in the regular course of business) (citation and punctuation omitted); *AAMCO Transmissions v. Baker*, 591 F. Supp. 2d 788, 798 (E.D. Pa. 2008) (holding that "the assumption of reliability, accuracy, and trustworthiness underlying Rule 803 (6) [did] not apply" where the party seeking admission of the memorandum at issue "failed to show [that it was created] in the course of regularly conducted business activity, and not in anticipation of litigation").

The majority also places undue emphasis on the fact that the store was not a party to the criminal prosecution. While not a party to the criminal prosecution, a business, as the majority concedes, still has "an interest in seeing that a shoplifting suspect is prosecuted and incarcerated and thus no longer able to shoplift from its store." Given the business's interest in the success of the prosecution, the same trustworthiness and reliability concerns arise, irrespective of whether the litigation is civil or criminal. See, e.g., *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993) (treating documents prepared by business in anticipation of criminal prosecution of robbery suspect as raising the same concerns over trustworthiness and reliability as other documents "made in anticipation of litigation"). This is particularly true where, as in this case, the business initiates contact with the police

7

and has the shoplifting suspect arrested. Because the business could face civil liability for malicious prosecution if the criminal prosecution is later dismissed, the business has a vested interest in ensuring that the State succeeds in its prosecution of the suspect.

Finally, the majority glosses over the incomplete record developed by the State with respect to the Shoplifting Report, which fails to show that the Report was prepared by the store for some underlying business purpose other than anticipated litigation. The State failed to elicit any testimony whatsoever from the store's assistant manager or any other witness explaining whether or to what extent shoplifting reports were used in the store's underlying business operations, such as for inventory control or insurance purposes, rather than simply to memorialize shoplifting incidents for purposes of anticipated criminal or civil litigation. Given the entire absence of any testimony on this issue, there is simply no evidence that shoplifting reports were "made for the systematic conduct of the business as a business," *Palmer*, 318 U.S. at 113, and thus in the regular course of the store's business under OCGA § 24-8-803 (6).

For these reasons, I would conclude that the trial court erred in admitting the Shoplifting Report as a business record. Furthermore, nonconstitutional error is

harmless in a criminal case only if it is "highly probable that the error did not contribute to the judgment," *Leverette v. State*, 303 Ga. App. 849, 852 (2) (696 SE2d 62) (2010) (footnote omitted), and when that test is applied in this case, it is clear that the erroneous admission of the Shoplifting Report was harmful with respect to Thompson's conviction for felony shoplifting.

To prove felony shoplifting under the law as it existed at the time of the offense, the State was required to show that the value of the property stolen by Thompson was over $300. OCGA § 16-8-14 (b) (1) (2010).[3] "Value," according to the statute, "means the actual retail price of the property at the time and place of the offense," and "[t]he unaltered price tag or other marking on property, or duly identified photographs thereof, shall be prima-facie evidence of value and ownership of the property." OCGA § 16-8-14 (c) (2010).

The State did not introduce the price tags for the stolen camera and game console, photographs of the tags, or testimony regarding the prices from an employee at the store with personal knowledge regarding pricing. Instead, the sole evidence of the value of the stolen items introduced by the State was the Shoplifting Report.

---

[3] The current version of the statute requires the State to show that the value of the stolen property was over $500 to sustain a conviction for felony shoplifting. See OCGA § 16-8-14 (b) (1) (2014).

9

Consequently, the improper admission of the Shoplifting Report contributed to Thompson's felony shoplifting conviction, and we should reverse his conviction and sentence on that count of the indictment.

I am authorized to state that Judge Miller joins in this dissent.