**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0083. SHIELDS v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Maurice Shields was convicted of multiple counts of aggravated battery (family violence) and aggravated assault (family violence). He appeals the convictions, arguing that the trial court erred by denying his motion in limine to prevent reference to his status as a parolee, that the trial court erred in considering a prior conviction when sentencing him as a recidivist, and that he received ineffective assistance of trial counsel. We hold that the trial court did not err by denying the motion in limine because references to Shields' parole status were not improper, that Shields failed to meet his burden of showing the invalidity of the prior conviction used in sentencing, and that he received effective assistance of counsel. We therefore affirm the convictions.

Viewed in the light most favorable to the verdict, *Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013), the evidence shows that the victim and Shields married while Shields was incarcerated. At the time of his attack on the victim, Shields had been released from prison and had been living with the victim and their daughter for five or six months. Shields and the victim were not getting along.

On the day of the incident, August 12, 2009, Shields and the victim argued. Shields became enraged, picked up the victim, threw her to the floor and threw a chair at her. The victim left the house with their daughter and went to her doctor. She then went to the parole office to inform Shields' parole officer of what happened. The parole officer said that officers would arrest Shields that day and that the parole officer would call the victim once this was accomplished.

Eventually, the victim received word that the parole officer had given up trying to locate Shields that day and would arrest him the next morning. The victim went home, and Shields was there. Shields began accusing the victim of being unfaithful and began attacking her. He stabbed her in the chest with scissors; threw a can of corn at her; grabbed a table that the victim had been using as a shield, placed the table on the victim, and began jumping on it; threw a spare tire at her twice, breaking her wrist; and sprayed her with mace.

2

Shields stopped attacking the victim and tried to wash the mace from her. But then he saw from the victim's phone that she had been speaking with his parole officer, and he became enraged again. He hit the victim in the eye with a lamp and threatened to kill her, holding a knife against her throat.

The next morning, several police officers and parole officers went to the house to arrest Shields. Shields knew they were coming, and he made the victim hide. When the officers arrived, Shields told them that the victim was not there. When the victim heard officers asking her daughter where her mommy was, she left her hiding place. The officers arrested Shields on a parole warrant. The victim was taken by ambulance to the hospital. The emergency room doctor who treated her testified about the victim's injuries.

1. *The trial court did not err by denying Shields' motion in limine.*

Shields argues that the trial court erred by denying his motion in limine to prevent references to his status as a parolee because the references impermissibly placed his character in issue. Those references primarily came from two witnesses, the victim and Shields' parole officer. The victim testified that when Shields learned that the victim had been in contact with his parole officer, Shields became enraged and assaulted her again. The victim's testimony "was relevant to prove that [Shields]

had a motive to [assault] the victim, and relevant evidence is not rendered inadmissible simply because it incidentally puts the defendant's character in issue." *Terrell v. State*, 271 Ga. 783, 787-788 (7) (523 SE2d 294) (1999).[1] See also *Dickerson v. State*, 273 Ga. App. 499, 501 (2) (615 SE2d 584) (2005) (evidence that defendant was on parole at the time of arrest was admissible to show motive for giving a false name, even though the evidence might have reflected negatively on defendant's character).

Shields' parole officer testified that the victim had reported the first assault to her, leading the parole officer to obtain a warrant for his arrest, and about the circumstances of his arrest. "[T]he decision whether to admit evidence connected to an arrest lies within the discretion of the trial court. Further, all of the circumstances surrounding an arrest are admissible for whatever value the jury wants to place on them. Material evidence is not made inadmissible merely because it inadvertently places a defendant's character in issue." *Solis v. State*, 268 Ga. App. 493, 500 (3) (602 SE2d 166) (2004) (citations and punctuation omitted).

---

[1]"Under the new Evidence Code, which applies to trials beginning on or after January 1, 2013, the admissibility of this sort of '[e]vidence of other crimes, wrongs, or acts' is governed by OCGA § 24-4-404 (b)." *Thompson v. State*, __ Ga. __, __ n. 5 (__ SE2d __) (Case No. S14A0235, decided April 22, 2014).

Shields has not shown that the trial court abused his discretion by denying the motion in limine.

2. *Shields has not shown that the trial court erred by sentencing him as a recidivist.*

Shields argues that the trial court erred by sentencing him as a recidivist under OCGA § 17-10-7 (c), because one of the convictions upon which the state relied was inadmissible. Specifically, Shields argues that the state failed to prove the voluntariness of the guilty plea upon which that prior conviction was entered. The state introduced a certified copy of the conviction, which reflected that Shields had pled guilty thereto and had been represented by counsel. The burden then shifted to Shields

> to prove that the plea[ was] not voluntary. [Shields], however, did not present any evidence on this point. Although he cites [*Gadson v. State*, 197 Ga. App. 315, 317-318 (4) (398 SE2d 409) (1990),] for the proposition that the state, rather than he, was required to show that the plea[ was] voluntary, our decision in [*Gadson*] was based on the Supreme Court of Georgia's opinion in *Pope v. State*[, 256 Ga. 195, 209 (17) (345 SE2d 831)]. The [c]ourt subsequently overruled *Pope* on the issue of the allocation of burdens of proof regarding the voluntariness of pleas in non-death penalty cases.

5

*Mikell v. State*, 309 Ga. App. 608, 610 (710 SE2d 824) (2011) (citations and footnote omitted). "Absent an affirmative showing that [Shields'] plea was not voluntary, a trial court is entitled to rely on a presumption of regularity with regard to the plea process." *Rucker v. State*, 304 Ga. App. 184, 188 (2) (b) (ii) (695 SE2d 711) (2010) (citation and punctuation omitted).

3. *Ineffective assistance of counsel.*

Shields argues that trial counsel was ineffective in three ways: counsel failed to object to inadmissible hearsay; counsel did not properly inform Shields of the effects of recidivist punishment; and counsel failed to introduce evidence of Shields' mental illness in mitigation of sentencing. None of these alleged errors amounts to ineffective assistance of counsel.

To prevail on his claim of ineffective assistance of counsel, Shields is required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If Shields "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted).

(a) *Hearsay.*

6

Shields argues that trial counsel was ineffective for failing to object to two specific statements which he contends were hearsay that bolstered the victim's credibility.

Shields argues that trial counsel was ineffective for failing to object to the victim's testimony that during the assault, their daughter was shouting, "Leave Mommy alone." At the motion for new trial hearing, counsel testified that he did not object because the testimony fell under two exceptions to the hearsay rule applicable at the time of trial, the res gestae exception and the excited utterance exception. We agree, see *Cox v. State*, 274 Ga. 204, 206 (3) (553 SE2d 152) (2001), and counsel was not ineffective for failing to object.

Shields argues that trial counsel was ineffective for failing to object to the victim's testimony that, when she informed the parole officer of the abuse, the parole officer said she suspected Shields had been abusing the victim. Assuming that counsel's failure to object to this testimony was error, Shields has not shown prejudice. To the extent the parole officer's suspicion was relevant, it was relevant only to the issue of whether Shields actually committed aggravated battery and aggravated assault against the victim. Given the other evidence that Shields committed those crimes, he has not shown a reasonable probability that, had counsel

objected to the victim's testimony about the parole officer's suspicions, the outcome of his trial likely would have been different. See *Johnson v. State*, __ Ga. __, __ (3) (__ SE2d __ ) (Case No. S14A0558, decided June 30, 2014) (because there was admissible evidence on a point, the admission of hearsay evidence on that point did not in reasonable probability affect trial's outcome so as to demonstrate that counsel rendered ineffective assistance by failing to object).

(b) *Recidivist sentencing.*

Shields argues that counsel was ineffective for failing to inform him correctly about recidivist sentencing. He argues that trial counsel informed him that he would be sentenced under OCGA § 17-10-6, but OCGA § 17-10-7 actually applied. He argues that trial counsel informed him that if he were convicted of both aggravated assault and aggravated battery, in the "best case scenario" he could be sentenced to 40 years, but that OCGA § 17-10-7 does not require consecutive sentences. However, Shields does not assert that these alleged deficiencies harmed him, and he has thus failed to show ineffective assistance of counsel. Cf. *Davis v. State*, 325 Ga. App. 572, 575 (2) (754 SE2d 151) (2014) ("Where. . . the defendant's complaint is that he went to trial instead of pleading guilty because of counsel's deficient representation, the proper question at the prejudice step is whether the defendant demonstrated that, but

8

for counsel's deficient performance, there is a reasonable probability that he would have accepted the [s]tate's plea offer.") (citation and punctuation omitted).

(c) *Mitigation evidence.*

Shields enumerates as error that counsel was ineffective for failing to introduce evidence that he had been diagnosed with major depressive disorder. Although Shields enumerates as error that counsel should have introduced this evidence as a defense and in mitigation of sentencing, the only argument he makes concerns counsel's failure to introduce this evidence in mitigation of sentencing. Thus, the portion of the enumeration concerning the failure to introduce this evidence as a defense is deemed abandoned. See Court of Appeals Rule 25 (c) (2).

As evidence of his diagnosis, Shields points to a report prepared by a forensic psychologist from the Georgia Regional Hospital at Savannah, who evaluated Shields to determine his competency at the time he committed certain acts on August 12, 2009,[2] to determine his competency to stand trial, and to recommend a possible disposition. In her report, the forensic psychologist noted that since October 2009, Shields had been treated for major depressive disorder, which had been diagnosed

---

[2]This is the same day as the attack at issue here, but it is not clear whether the report, which is addressed to a different judge than the judge who presided here, was prepared for this case.

while he was incarcerated for the August 12 acts. The forensic psychologist concluded that there was no evidence that on August 12, Shields was acting from a delusional compulsion that overmastered his will or that he lacked the capacity to distinguish right from wrong because of mental illness or mental defect. Finally, the forensic psychologist determined that Shields did not require inpatient psychiatric hospitalization and that he was not at imminent risk for harm to himself or others, but rather that he had symptoms of sadness. In sum, the only evidence regarding Shields' depression was the forensic psychologist's observation that another doctor had diagnosed Shields for depression some time before.

As for Shields' sentence, the court ordered that the 20-year sentence on count two was to be served consecutively to the 20-year sentence on count one, but the 20-year sentences on the remaining four counts upon which Shields was sentenced were to be served concurrently with count two. In other words, instead of sentencing Shields to serve 120 years incarceration, he sentenced Shields to serve 40 years incarceration.

Shields "has pointed to no evidence . . .that the proffered mitigating [evidence – an observation by a forensic psychologist that another doctor had diagnosed Shields with depression –] would have altered the trial court's sentence. Accordingly,

[Shields] has not shown that trial counsel's failure to present this evidence in mitigation prejudiced him." *Carroll v. State*, 252 Ga. App. 142, 148 (4) (c) (555 SE2d 807) (2001) (citations omitted).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*