**THIRD DIVISION
DOYLE, P. J.,
MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 10, 2025**

# In the Court of Appeals of Georgia

A25A1432. SMITH v. THE STATE.

MARKLE, Judge.

Following a jury trial, James Smith was convicted of criminal attempt to commit murder (OCGA §§ 16-4-1; 16-5-1 (a)); eight counts of aggravated assault on a public safety officer (OCGA § 16-5-21 (a) (2), (c) (1)); and two counts of possession of a firearm during commission of a felony (OCGA § 16-11-106 (b)). He was sentenced as a recidivist under OCGA § 17-10-7 (c) based on his prior convictions. Smith now appeals from the denial of his motion for new trial, arguing that (1) the evidence was insufficient to support his convictions; (2) the trial court erred by instructing the jury on aggravated assault and refusing his requested instruction for the lesser included offense of reckless conduct; (3) he did not receive a fair trial after the trial court

denied his motion to continue the case pending resolution of a possible death penalty case in another county; and (4) he was improperly sentenced as a recidivist because the prior conviction was the result of an involuntary guilty plea due to ineffective assistance of counsel. For the reasons that follow, we affirm Smith's convictions, but we vacate his sentences, and remand the case for further proceedings consistent with this opinion.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that, in 2018, officers with the Houston County Sheriff's Office obtained a search warrant for Smith in connection with a murder he allegedly committed in Crisp County.[1] The officers, who were members of the sheriff's response team ("SRT"), planned to serve the warrant on Smith at a hotel. After arriving at the hotel, the SRT members proceeded to approach Smith's room in a line, with Officer Spivey in the lead, carrying a shield. Behind Spivey was Officer Marshall, who would breach the door to the hotel room, followed by Officers Blackmon, Lawrence, Hoskins, Gilliam, and

---

[1] According to the State, Smith entered a guilty plea in the Crisp County case in April 2025, and he was sentenced to life imprisonment without parole.

Gunn.[2] Initially, the officers tried a room key to access the room, but it did not work. As Marshall began to breach the door, Spivey called out to identify themselves as police. Immediately, Smith began shooting at the officers through the window. At least two bullets struck Spivey's shield. Spivey fired in return as the SRT team retreated.

The team set up a containment perimeter, and Gunn prepared to fire a gas canister into the room. Smith continued firing at the officers, and one of the bullets ricocheted and struck Gunn's helmet. Other bullets struck the ground near the officers positioned in the parking lot. Once Gunn deployed the gas, Smith exited the hotel room and surrendered. As officers entered the hotel room to confirm no one else was inside, they discovered handguns and ammunition, along with shell casings. Crime scene technicians found numerous shell casings in the room and on the ground outside near where the officers had been stationed.

Based on this incident, Smith was indicted for one count of attempt to commit murder by shooting at Spivey; nine counts of aggravated assault on a public safety officer by "mak[ing] an assault upon the person of [each officer], a public safety

---

[2] Officer Stokes was also present, but Smith was acquitted of the charge related to him.

officer, with a deadly weapon . . . by shooting at said officer, while said officer was engaged in the performance of his official duties;" and two counts of possession of a firearm during commission of a felony. The State also gave notice of its intent to use Smith's prior convictions for rape and violations of the sex offender registry at sentencing.

Thereafter, defense counsel requested and was granted four continuances due to the pandemic and Smith's pending death penalty case in Crisp County that had served as the basis for SRT's attempt to serve the arrest warrant at the hotel in Houston County. In granting the fourth motion, the trial court indicated that there would be no more continuances in the absence of "extraordinary circumstances." Nevertheless, defense counsel then moved to "postpone" the hearing until the capital case proceeded. Counsel explained that the Crisp County and Houston County charges were intertwined and if he was tried in Houston County first, it could affect his sentence in the Crisp County case. Counsel further stated that he was in the process of challenging the prior convictions the State intended to use in aggravation of sentencing. At a subsequent motions hearing, counsel renewed the motion for a continuance and, after an ex parte discussion, the trial court denied it. Counsel also

sought to exclude any evidence of the prior convictions for sentencing purposes because Smith's guilty plea was not made knowingly and voluntarily.

At trial, the SRT members testified to the events that day and stated that they feared being shot as they attempted to arrest Smith. The jury also watched video of the scene in which gunfire could be heard. Smith did not testify.

Smith requested that the jury be instructed on reckless conduct, as a lesser included offense of the aggravated assault, but the trial court declined to give that instruction. Smith also objected to the aggravated assault instruction as not tailored to the indictment. The trial court overruled the objection and gave the pattern jury instruction. Specifically, the trial court charged the jury that, to prove aggravated assault, the State had to show that Smith attempted to cause a violent injury or had placed the officer in reasonable fear of immediately receiving a violent injury. The trial court also instructed the jury that Smith was presumed innocent; the State had to prove guilt beyond a reasonable doubt; and a grave suspicion was insufficient to support a conviction.

The jury convicted Smith on all counts except one aggravated assault charge. The trial court then considered Smith's prior convictions, reviewing the certified copy

of the indictment and plea colloquy, and finding that his plea was voluntarily given in each of the prior cases. The trial court sentenced him as a recidivist under OCGA § 17-10-7 (c) to 120 years' imprisonment. Smith filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Smith first argues that the evidence was insufficient to convict him of any of the charges because there was no evidence he had the intent to commit murder or that he had shot *at* any of the officers. He further contends that the jury convicted him solely because of testimony that the officers were in fear of being shot, but that there was no evidence that he shot at the specific officers.[3] We disagree.

> When a defendant challenges the sufficiency of the evidence to support [his] criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld. Our limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts.

---

[3] Smith does not directly challenge the firearm possession counts.

(Citation and punctuation omitted.) *Wright v. State*, 365 Ga. App. 415, 419-420 (1) (878 SE2d 751) (2022). With this standard in mind, we turn to the crimes for which Smith was convicted.

(a) *Criminal attempt to commit murder*.

"A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). For purposes of this statute, "[m]alice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." OCGA § 16-5-1 (b). And, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Criminal attempt "consists of three elements: first, the intent to commit the crime; second, the performance of some overt act towards the commission of the crime; and third, a failure to consummate its commission." (Citation and punctuation omitted.) *Bonner v. State*, 369 Ga. App. 693, 696 (1) (894 SE2d 451) (2023).

Here, Smith argues that the evidence showed only that he intended to shoot the shield the officers were carrying to force them to retreat. Whether a defendant has the requisite intent is a question for the jury. *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000). Moreover,

> [i]mplied malice . . . may be found when the defendant's conduct exhibits a reckless disregard for human life. The Supreme Court of Georgia has adopted the definition of implied malice as being extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others—though unaccompanied by any intent to kill or do serious bodily injury—and which actually causes the death of another. Reckless disregard for human life may be the equivalent of a specific intent to kill.

(Citation and punctuation omitted.) *Hughey v. State*, 337 Ga. App. 145, 149-150 (2) (786 SE2d 523) (2016). The evidence recounted above was sufficient for the jury to conclude that Smith possessed the requisite intent. Contrary to Smith's argument, he did not simply shoot into the shield twice; he shot at officers repeatedly. The jury was free to infer that he intended to strike Spivey and, from that short range, to kill him. Cf. *Adcock v. State*, 317 Ga. App. 468-469 (1) (731 SE2d 365) (2012).

8

(b) *Aggravated assault.*[4]

Under OCGA § 16-5-21 (a) (2), "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." A person commits an assault when he or she "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2).

Here, each officer testified that Smith fired a gun at them, those bullets struck the shield the officers used for protection, as well as the area around where the officers were positioned, and the officers feared they could be shot while attempting to serve the arrest warrant. This evidence was sufficient for the jury to convict Smith of aggravated assault. See *Green v. State*, 304 Ga. 385, 388 (1) (a) (818 SE2d 535 (2018) ("OCGA § 16-5-21 (a) (2)[] does not require the deadly weapon to have been pointed directly at each victim, but merely that the defendant use the deadly weapon in such

---

[4] Smith also argues that the evidence did not exclude every other reasonable hypothesis except guilt. But that standard applies when the case is based wholly on circumstantial evidence. *Douglas v. State*, 321 Ga. 739, 747-748 (1) (b) (917 SE2d 115) (2025). The case here is not. See *Bradley v. State*, 318 Ga. 142, 144 (1) (897 SE2d 428) (2024) ("Eyewitness testimony based on the witness's firsthand observations of the crime is direct, not circumstantial, evidence.") (citation and punctuation omitted).

manner as to 'place[ ] another in reasonable apprehension of immediately receiving a violent injury.'"); see also *Callaway v. State*, 321 Ga. 186, 190 (2) (a) (913 SE2d 595) (2025) (sufficient evidence to support aggravated assault where testimony showed defendant fired weapon at the front of the car rather than backseat where victims were seated); *Hawkins v. State*, 260 Ga. 138, 138 (2) (b) (390 SE2d 836) (1990) (sufficient evidence where testimony showed defendant fired into crowd to frighten group). Although Smith contends that the evidence failed to show he had the intent to shoot the officers, whether a defendant has the requisite intent is a question for the jury. *Palmer*, 243 Ga. App. at 657. And, based on the evidence, the jury was authorized to find Smith had the requisite intent to commit aggravated assault.

2. Smith next argues that the trial court erred by (a) instructing the jury as to aggravated assault because the instruction as given differed from the offenses as charged in the indictment; and (b) declining to give his requested reckless conduct instruction because the evidence showed that he was firing shots wildly rather than aiming. We discern no error.

(a) *Aggravated assault instruction*.

Here, the indictment charged Smith "did knowingly make an assault upon [a police officer], with a deadly weapon, to wit: 9mm firearm, by shooting at said officer, while said officer was engaged in the performance of his official duties[.]" The specific jury charge as given instructed the jury that the State had to prove that Smith assaulted the officer with a deadly weapon. It then defined assault as attempting to cause a violent injury or committing an act that placed the officer in reasonable fear of immediately receiving a violent injury. We have upheld the use of this aggravated assault instruction in cases in which the defendant fired at the victims. See *Callaway*, 321 Ga. at 190 (2) (a) (noting use of this aggravated assault instruction where defendant was charged with shooting at victims). Moreover, the jury was also instructed that the State had to prove every material allegation in the indictment beyond a reasonable doubt. *Simpson v. State*, 302 Ga. 875, 877 (2) (808 SE2d 718) (2017) (any error in court's instruction that included a method not charged in the indictment was cured by the court's instructions that the State had to prove all material allegations and every essential element of the offense beyond a reasonable doubt).

Nor did the instruction as given constructively amend the indictment or allow the jury to convict based on a method not charged in the indictment. Cf. *Cato v. State*, 304 Ga. 496, 497-498 (2) (820 SE2d 41) (2018) (on plain error review, aggravated assault instruction that included reasonable fear of immediately receiving violent injury where indictment charged that defendant committed aggravated assault by shooting victim, would not warrant reversal). As such, Smith's challenge to the jury instruction fails.

(b) *Reckless conduct instruction*.

As to the denial of Smith's request for an instruction on the lesser offense of reckless conduct, such an instruction was not warranted. "A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. Whether the evidence warranted the requested instruction is a legal question that we review de novo."(Citations and punctuation omitted.) *Wilson v. State*, 315 Ga. 728, 736 (6) (883 SE2d 802) (2023).

The record does not contain any written requests for jury instructions, but Smith requested the lesser included instruction during the charge conference. *Martin v. State*, 349 Ga. App. 656, 659 (2) (825 SE2d 227) (2019) ("A trial judge never errs

in failing to instruct the jury on a lesser[-]included offense where there is no written request to so charge. An oral request to charge does not alter this mandate.") (citation omitted). Regardless, the trial court considered the oral request and properly rejected it. See *Salazar-Balderas v. State*, 343 Ga. App. 201, 203-205 (1) (806 SE2d 644) (2017) (considering the argument despite defendant's failure to submit written instruction where trial court considered requested instruction and denied it on other grounds).

The testimony here showed that Smith's conduct placed officers in fear of being shot. The evidence further showed that Smith shot at the officers, striking one officer's shield, as well as the area where other officers were stationed. There is no basis for a reckless conduct instruction where the evidence shows the intentional act of firing a gun at another. *Cain v. State*, 288 Ga. App. 535, 537 (2) (654 SE2d 456) (2007). As such, an instruction for the lesser included offense of reckless conduct was not warranted here. *Calloway*, 321 Ga. App. at 190 (2) (a); *Cain*, 288 Ga. App. at 537 (2).

3. Smith further argues that he did not receive a fair trial because he was denied a continuance. He contends that he was prejudiced by the inability to raise certain

13

defenses and mitigating evidence and to testify at trial, all of which could then be used against him in the Crisp County case.

"The grant or denial of a continuance is within the discretion of the trial court and will not be disturbed unless it clearly appears the trial court abused that discretion." (Citation and punctuation omitted.) *Bass v. State*, 372 Ga. App. 510, 516 (3) (904 SE2d 699) (2024); see also OCGA § 17-8-22. "To obtain a new trial based upon the denial of a motion for a continuance, an appellant must show not only a clear abuse of discretion on the part of the trial court in denying the motion but also that he was harmed by that denial." (Citation omitted.) *Blalock v. State*, 316 Ga. 330, 338 (1) (888 SE2d 98) (2023); see also *Geiger v. State*, 295 Ga. 648, 651 (3) (763 SE2d 453) (2014).

Here, the trial court granted four continuances before denying Smith's additional request. In doing so, the trial court noted that the case had been pending for more than four years by that time. Smith claims this denied him due process and the right to a fair trial by prejudicing his defense; prevented him from testifying or presenting other mitigating evidence that could be used against him later in the Crisp

County case; and precluded his ability to explore a mental health defense. Smith has not shown that the trial court abused its discretion here.

Essentially, Smith speculates that a conviction in the instant case could result in a more severe sentence if he was later tried in the Crisp County case. But, these sort of speculative scenarios do not establish that Smith was harmed by the denial such that the trial court abused its discretion. *Blalock*, 316 Ga. at 339 (1). That is especially true where, as here, there is overwhelming evidence of guilt. *Pheonix v. State*, 304 Ga. 785, 789 (2) (822 SE2d 195) (2018).

4. Finally, Smith contends that he should not have been sentenced as a recidivist because the prior conviction on which the trial court relied was the result of ineffective assistance of counsel and an involuntary guilty plea. We agree that the trial court improperly considered the prior convictions without first ensuring they were the product of a knowing plea entered into with the assistance of counsel.

A defendant may collaterally challenge prior convictions used to enhance his sentence on the ground that his guilty plea was not knowingly and voluntarily made. See, e.g., *Parham v. State*, 320 Ga. App. 676, 678-679 (4) (739 SE2d 135) (2013); *Wheeler v. State*, 249 Ga. App. 116, 117 (2) (547 SE2d 746) (2001); see also *Shields v.*

*State*, 328 Ga. App. 100, 102-103 (2) (761 SE2d 516) (2014); *Mikell v. State*, 309 Ga. App. 608, 610 (710 SE2d 824) (2011); *Brown v. State*, 244 Ga. App. 544, 544-545 (536 SE2d 253) (2000) (when there is a challenge to a prior conviction being used to enhance sentence, State has burden to show defendant had counsel at time of plea, then burden shifts to defendant to show plea was not voluntary); *Gillman v. State*, 239 Ga. App. 880 (522 SE2d 284) (1999) (allowing defendant to challenge prior convictions used to enhance sentence on the ground that prior conviction was the result of an involuntary plea). Additionally,

> when a defendant collaterally attacks the validity of a prior guilty plea being used by the [S]tate for recidivist sentencing in a subsequent proceeding, the burden is on the [S]tate to prove both the existence of the prior guilty pleas and that the defendant was represented by counsel in all felony cases. Upon such a showing, the presumption of regularity is then applied and the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. A silent record or the mere naked assertion by an accused that his prior counseled plea was not made knowingly and intelligently is insufficient.

(Citation and punctuation omitted.) *Murray v. State*, 328 Ga. App. 192, 197 (5) (761 SE2d 590) (2014).

16

In this case, prior to trial, the State gave notice of its intent to use Smith's prior convictions to enhance his sentences, submitting certified copies of the prior convictions. Smith objected to the evidence, and proffered a copy of the guilty plea record to show the plea was not voluntary and was the result of his counsel or the trial court's failure to inform him, among other things, that his conviction would require him to register as a sex offender. The trial court reviewed the plea colloquy and indictments from the prior convictions, and found that Smith entered into his pleas voluntarily.

When we review whether a plea was entered into knowingly and voluntarily, we consider the totality of the circumstances. *Green v. State*, 318 Ga. 610, 612 (898 SE2d 500) (2024). Applying this analysis, we must consider whether the trial court's plea colloquy sufficiently apprised Smith of the charges against him and the rights he would be waiving with his guilty plea.

Here, the record shows that Smith was represented by counsel when he pled guilty to rape in 1998. At the plea hearing, the trial court read the indictment, confirmed Smith was aware of several of the rights he would waive by virtue of his plea and that he had not been threatened or coerced into entering his plea, and

17

determined the mandatory minimum sentence was consistent with the sentence recommendation Smith expected. Noticeably absent from this colloquy, however, is any mention of Smith's need to register as a sex offender as a result of his conviction, his rights to post-conviction relief, or his ability to withdraw his plea. *Taylor v. State*, 304 Ga. App. 878, 882-883 (1) (698 SE2d 384) (2010) (failure to advise defendant that sexual offender registry was collateral consequence of guilty plea could be ineffective assistance of counsel); see also OCGA § 42-1-12; *Finnicum v. State*, 296 Ga. App. 87, n. 1 (673 SE2d 604) (2009) (noting that registry became effective in 1996); compare *Green*, 318 Ga. at 612 (applying totality of the circumstances test and explaining that "the failure to specifically advise the defendant of his right against self-incrimination—or any of the three rights listed in *Boykin* [*v. Alabama*, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969)] —on the record does not require the reversal of a guilty plea as a matter of federal constitutional law if the record as a whole shows that the defendant's plea was voluntary and intelligent.").

Here, the trial court did not appear to consider these other rights when evaluating the voluntariness of Smith's plea. Additionally, the trial court did not of an enhanced consider Smith's argument that his plea cannot form the basis  sentence

because it was involuntary due to counsel's failure to adequately consult with him about the ramifications and collateral consequences. And, ultimately, the trial court failed to hold an evidentiary hearing to enable Smith the make a showing and meet his burden of production.[5] .

Once the State met its burden to show the existence of the prior guilty pleas and that the defendant was represented by counsel in all felony cases, as it did here, the burden shifted to Smith to show "an infringement of his rights or a procedural irregularity in the taking of the plea." (Citation and punctuation omitted.) *Murray*, 328 Ga. App. at 197 (5). But the trial court did not permit Smith to meet his burden.

---

[5] Focusing solely on Smith's argument that his plea counsel was ineffective, the trial court explicitly stated, "I don't think that I am required to allow him to pursue and [sic] ineffective assistance of counsel defense essentially to prohibit recidivist sentencing. If someone can show me a case of statutory [sic] that allows that then I will absolutely do it, but I don't think that's it." The trial court is correct, in part. Our case law does not require that at a sentencing hearing the trial court hold a hearing on and decide whether prior counsel was constitutionally effective or not in the prior plea case, but it does allow a defendant to challenge the use of their prior pleas to enhance their sentences based on a claim that the plea was not knowing or voluntary due to the conduct of counsel - whether or not that conduct rises to the level of ineffective assistance under our case law. This is a fine line, and in so holding, we do not suggest that Smith or any other defendant could challenge the underlying guilty plea on any basis through a subsequent recidivist sentencing hearing on a different offense. Rather the focus at such a subsequent hearing is the voluntariness of the prior plea for the sole purpose of its use in enhancing the sentence in that case.

As a result, we must vacate the sentences imposed, and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part; vacated in part; and case remanded with direction.*

*Doyle, P. J., and Padgett, J., concur.*